IN THE

## SUPREME COURT OF JUDICATURE

OF THE'

## STATE OF NEW-YORK.

IN AUGUST TERM, 1812, IN THE THIRTY-SEVENTH YEAR OF OUR
INDEPENDENCE.

---

JACKSON, *ex dem.* BONNELL AND OTHERS, *against* SHARP.

THIS was an action of ejectment, brought to recover part of lot F. entered in-
No. 72., in the township of *Aurelius*, in the county of *Cayuga.* to possession
The cause was tried at the *Cayuga* circuit, before Mr. Justice out title, and
*Yates*, the 11th of *June*, 1811.

The plaintiff gave in evidence, a patent from *John Bonnell*, one T., who cove-
of the lessors of the plaintiff, for lot No. 72., in *Aurelius*, dated the nanted to give
8th *July*, 1790, and a deed from *Bonnell* to *Andrew Goodyear*, for the land.
the other lessor, dated 11th *September*, 1807, which was recorded the contract
the 25th *April*, 1811. The possession by the defendant of the took posses-
premises in question was also proved.

The defendant gave in evidence a power of attorney, dated 7th ceived a deed
*April*, 1805, duly acknowledged, and recorded the 17th *October*, *November*,
1807, and, af-
terwards, a
deed from B., the patentee, and true owner, in *September*, 1808, which was duly recorded in *Oc-
tober*, 1808. A previous deed had been given by B., the patentee, in *September*, 1807, to G., but
which was not registered until *April*, 1811.

It was held that the 'original possession of A. being without title, was to be deemed the posses-
sion of B., the patentee, and that the possession of S., under the covenant from A. to T., was not
adverse.

The doctrine of adverse possession is to be taken strictly, and must be made out by clear and
positive proof, and not by inference. Every presumption is in favour of a possession in subordina-
tion to the title of the true owner.

If a subsequent purchaser has *notice*, at the time of his purchase, of a prior unregistered deed,
it is the same to him as if such deed had been registered; and if the *agent* of such subsequent pur-
chaser, at the time of making the purchase, *knows* of the prior unregistered deed, it is the same
as notice to his principal.

1806, from *Stephen Thorn*, authorizing *Joseph Grover* to sell the whole of lot No. 72., in *Aurelius*, &c.; and articles of agreement between *Joseph Grover*, as attorney of *Thorn*, and *Samuel* and *Abraham Foster*, by which *Thorn*, by his said attorney, covenanted to convey one hundred acres of lot No. 72., and which included the premises in question, at a future day, to *S.* and *A. Foster*, for the sum of 500 dollars, to be paid at a future day. This agreement, with the premises, was, afterwards, by a written endorsement, under the hands and seals of *S.* and *A. Foster*, dated the 26th of *April*, 1805, assigned to *Sharp*, the defendant. A deed was also read in evidence, dated the 26th of *November*, 1807, from *Thorn* to the defendant, for 30 acres, part of lot No. 72., being the premises in question, for the consideration of 400 dollars.

*John Haring*, a witness, testified, that the *Fosters* were in possession of the premises, a year or two before the date of the agreement with *Thorn*, but under whom they claimed title he could not say, but supposed it was under one *Carpenter*, who claimed to be the owner; that the title to the lot was frequently questioned; that the defendant had said that he had doubts or fears about the title. About three years before the trial, the witness went to *Virginia* to purchase the lot of *Bonnell*, for the occupants; *Bonnell* was at *Clarksburgh*, and refused to convey the lot, saying that he had conveyed to *Goodyear*. The witness, on his return, informed *Grover* of the answer of *Bonnell*.

*Abraham Foster* testified, that he entered on the land without title; that he spoke to *Joseph Grover* to procure a title, who told him, about a year afterwards, that *Thorn* had a title from the soldier *Bonnell*.

Another witness testified, that he told the defendant that *Goodyear* had all the title to the premises which was necessary; and that the defendant, on the 12th *April*, 1810, said that he never believed in his former title.

The defendant gave in evidence a deed from *Bonnell* to the defendant and the other occupants, of the whole of lot No. 72., dated 29th *September*, 1808, and recorded the 12th *October*, 1808, having been proved and acknowledged, on the day of its date, before a notary public, in *Harrison* county, in *Virginia*. *Joseph Grover* was a witness to the execution of this deed, which expressed a consideration of 500 dollars.

*Jabez Gould* testified, that *Grover* requested him to go to *Virginia* and buy the lot, and said, that from all accounts, *Goodyear* had got the right soldier.

A verdict was taken for the plaintiff, by consent, subject to the opinion of the court, on a case containing the above facts.

*Sill*, for the plaintiff. The lessors of the plaintiff having shown a regular paper title, the only questions are, 1. As to a subsisting adverse possession at the time of the conveyance; and, 2. As to the effect of the prior registry of the deed from *Bonnell* to the defendant.

1. The possession commenced under *Foster*, who entered without any claim of title. To constitute an adverse possession, it must be adverse at its commencement, and so continued. A person who enters without claiming title, is deemed to hold for the rightful owner.* Prior to the deed to *Goodyear*, the lessor, there was no person in possession, pretending to hold under a deed. There was nothing more than a contract for a deed, from a person who had no title.

*1 Johns.Rep. 156. 6 Johns. Rep. 218. 2 Sch. & Lef. Rep. 97.*

Again, both parties, in this case, claim under *Bonnell*; and there can be no adverse possession where both persons claim under the same title.†

†4 Johns.Rep. 230. 12 East, 153.

2. The prior registry of the deed to the defendant cannot avail him; since he had *notice* of the deed to *Goodyear*, at the time of the purchase; for *Grover* must be deemed to be the *agent* of the defendant;‡ and there was a direct notice to him of the deed to *Goodyear*, before the purchase.§

‡ 8 Johns.Rep. 140.
§ 3 Ves. jun. 478.

*Russell*, contra. 1. As to the adverse possession, the true inquiry is, how the tenant held at the time of the deed to the lessor. If he claims to hold under a title different from, or hostile to that of the lessor, it is sufficient. No matter whether such title be valid or spurious. In *Jackson* v. *Todd*,** the defendant came into possession under *Cady*, who held under an agreement with *Isaacs*.

** 2 Caines' Rep. 133. S. C. 6 Johns. Rep. 267.

A person who holds possession under an agreement for a deed, may set it up in his defence against an action of ejectment.†† If a possession is given under a contract for a deed, though it is only an equitable title, it is good as against the owner; but if he give a deed to a third person, such person, having the legal as well as

†† Yea v. Bucknell, Cowp. 473. Burr. Rep. 2209.

ALBANY,
August, 1812.

JACKSON
v.
SHARP.

equitable title, must prevail against him who has only an equitable title.

2. The deed from *Bonnell* to the defendant was first registered. The act (sess. 17. c. 1.) declares all deeds relating to the military bounty lands, which are not recorded, fraudulent and void against a subsequent purchaser, for a valuable consideration, unless first recorded. The deed from the patentee being first recorded, nothing can defeat its preference; not even a *notice*, for the language of this act is different from that relative to the registering of mortgages. If a party who has a deed for a valuable consideration, gets it first recorded, it will be valid. If a *notice* is to have any effect, it must be clearly proved, and be direct, fair and *bona fide*. The notice was to *Grover* not to *Sharp*, and at the time of the notice to *Grover*, *Goodyear* disclaimed holding under the deed, which was concealed. A notice, under these circumstances, can have no effect. Besides, *Grover* was the agent of *Thorn*, not of *Sharp*, who never had notice.

*Cady*, in reply, observed, that to render the case analogous to that of *Jackson* v. *Todd*, it should have been shown that there was a deed from *Bonnell* to *Thorn*. If *Thorn* had entered, declaring that he had a deed from *Bonnell*, when, in fact, he had none, his possession would not have been adverse. Though *Thorn*, supposing he should get a deed from *Bonnell*, promised to convey to *Foster*; yet *Bonnell*, though he had covenanted to convey to *Thorn*, might give a deed to *Goodyear*, who would have a valid and legal title.

It must be inferred, from the facts in the case, that *Grover* went to *Bonnell* as the agent of *Sharp*, who must, therefore, be charged with the notice to his agent.

*Per Curiam*. To entitle the plaintiff to recover upon this case, two propositions must be established; 1. That the deed from *Bonnell* to *Goodyear* was not void by reason of an adverse possession existing at the time; 2. That notice of that deed destroyed the effect of the prior registry of the deed from *Bonnell* to the defendant.

1. When the patentee, *Bonnell*, executed his deed to *Goodyear*, the defendant was in possession, under a covenant from *Stephen Thorn* to the *Fosters*, to convey to them the premises, upon a

consideration to be paid. The *Fosters* entered upon the premi-
ses, without title, as one of them confessed, and he spoke to *Gro-*
*ver,* the agent of *Thorn,* to procure a title. When he first spoke
to *Grover,* the latter did not say that *Thorn* had any title ; but,
about a year afterwards, *Grover* told him that *Thorn* had a deed
from the soldier *Bonnell.* The defendant entered under an assign-
ment of the covenant to the *Fosters.* Whatever pretence or colour
of title the defendant had, at the time of the execution of the deed to
*Goodyear,* it was avowedly under *Bonnell,* the patentee. The
original possession by the *Fosters* being without any pretence of
title, was to be deemed the possession of *Bonnell,* the true owner ;
and I think it would be carrying the doctrine of adverse posses-
sion beyond the authorities, and beyond the truth of the case, to
consider the covenant of *Thorn,* who said, or, what is the same
thing, whose agent said, that he held under *Bonnell,* as amount-
ing to an ouster of *Bonnell,* and an act in denial of, and in hostility
to, his right. What kind of right or title *Thorn* pretended to have
from *Bonnell* does not appear. His right might have been under
a mere covenant or contract to convey, such as he afterwards
made with the *Fosters ;* and we have no ground to infer that he
had any better pretension, when *Bonnell* conveyed to *Goodyear,*
in *September,* 1807. It is a settled rule, that the doctrine of ad-
verse possession is to be taken strictly, and not to be made out by
inference, but by clear and positive proof. Every presumption
is in favour of possession in subordination to the title of the true
owner. It is not unusual for persons to contract to convey at a
future day, in expectation of a capacity to convey by the given
day, though they have no title at the time of the contract. The
*Fosters* were originally in possession, in judgment of law, under
*Bonnell ;* and they never meant to change that character, and
to oust *Bonnell,* by taking the covenant from *Thorn.* They
took it, undoubtedly, under the impression that *Thorn* then was, or
would thereafter be, authorized to convey the title of *Bonnell ;* and
the defendant, as the assignee of the *Fosters,* must be deemed to
have succeeded to the possession under the same impression.
*Thorn* was never in possession, and, of course, there was no ad-
verse possession to be imputed to him. *Fosters* and the defend-
ant held possession, without setting up any adverse title, and under
a contract for a title to be derived from *Bonnell.* To consider

*Bonnell* as thereby disseised or dispossessed of his freehold, and to have lost his capacity to convey the land, is inadmissible. Adverse possession, so as to defeat the conveyance of the true owner, must be made out, clearly and positively; and so the court said in the case of *Wickham* v. *Concklin*, (8 *Johns. Rep.* 220.)

2. The next question is, whether this deed was superseded by the subsequent deed from *Bonnell* to the defendant, of *September*, 1808, and which was first recorded.

There is no doubt that if a subsequent purchaser has notice, at the time of his purchase, of a prior unregistered deed, it is the same to him as if it had been registered. It is not a secret conveyance by which he can be prejudiced or defrauded; and if he purchases with knowledge of such prior deed, and with the expectation of getting his deed first registered, he does an act against good conscience, and in abuse of the statute, which was made to prevent, and not to protect, fraud. It is, therefore, a well settled principle, that such notice supplies the place of a prior registry, and the only question here is, whether the defendant is chargeable with such notice.

In *July*, 1808, and about three months before the defendant's deed, *John Haring* went, as an agent for the defendant and the other occupants of the lot, to purchase the lot of *Bonnell*. *Bonnell* refused to sell, and told him that he had already conveyed the lot to *Goodyear*, one of the lessors of the plaintiff. Here, then, was a direct and positive notice to the agent of the defendant. *Haring* communicated this fact to *Joseph Grover*, who, in *September* following, went, as agent for the defendant, and the other occupants, to purchase, and succeeded in his mission. It is to be inferred that *Grover* was the agent also of the defendant, and, as such, made the purchase, because he had before acted as agent for *Thorn*, in selling the lot, and because he applied to *Gould* to go to the patentee and make the purchase, and, lastly, because we find him in *Virginia* at the time of the purchase, and a witness to the execution of the deed. No doubt he was the agent who made the purchase, and from whom the deed was afterwards received. Here we have then notice of the prior deed given to two successive agents of the defendant, and both employed for the very purpose of making the purchase. The notice in each case was direct and positive, and given prior to the purchase. Can we possibly doubt, after this, whether the knowledge of the prior

ALBANY,
August, 1812.

Doe
v.
Phelps.

deed was communicated from these agents to their principal, and especially by the first agent, whose object was defeated, in consequence of the very fact of the prior deed? The defendant confessed, in 1810, that "he never believed in his former title." But we need not bring home the notice to the defendant, for it is a well settled rule, that notice to the agent is notice to his principal. This has been frequently so ruled, in respect to the very question of a prior unregistered deed, and in respect to the agent employed to effect the purchase. (*Le Neve* v. *Le Neve*, 3 *Atk.* 646. 1 *Ves.* 64. *Amb.* 436. S. C. *Lord Forbes* v. *Deniston*, and other cases therein cited, 13 *Vesey*, 120.)

We are, accordingly, of opinion, that the plaintiff is entitled to judgment.