MOSES H. CONE, Respondent, *v.* THE EMPIRE PLAID MILLS, Appellant.

*Corporation — authority of a general manager to sell its product — not affected by a by-law requiring the contract to be signed by the president — authority to sign a written contract a question for the jury.*

The secretary and treasurer and general manager of a corporation, who had the charge of its mills, made its sales and purchases, drew its checks and appeared to the public as its sole representative, executed a written contract for the sale of certain of the products of the corporation, and received part of the proceeds, which were used for the purposes of the corporation.

*Held,* that the vendee was entitled to recover damages against the corporation for a breach of such contract, notwithstanding the fact that a by-law of the corporation, which provided that the president should sign all contracts by which a greater liability than $200 was assumed by the corporation, was not complied with;

That in such a case a writing was not necessary to bind the corporation, but that, if it was, the authority of the treasurer to execute it was, under the circumstances, a question for the jury.

APPEAL by the defendant, The Empire Plaid Mills, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 24th day of February, 1896, upon the verdict of a jury rendered after a trial at a Trial Term of the Supreme Court held in and for the county of New York, and also from an order entered in said clerk's office on the 26th day of February, 1896, denying the defendant's motion for a new trial made upon the minutes.

*William E. Wyatt* and *Robert W. Winston,* for the appellant.

*Samuel Untermyer* and *Louis Marshall,* for the respondent.

INGRAHAM, J.:

The complaint alleges that on the 17th day of November, 1892, the Cone Export and Commission Company entered into a contract with the defendant by which the latter sold and agreed to deliver to the said Cone Export and Commission Company certain goods manufactured by the defendant at prices agreed upon, and that the said Cone Export and Commission Company paid on account of the purchase price of said goods the sum of two thousand ($2,000) dollars, which was received and retained by the defendant and still remains in its possession; that the said defendant has refused to deliver the goods sold by it, though such delivery was demanded, and that the said Cone Export and Commission Company sustained damage to the amount of five thousand nine hundred and fifty-five and sixty-one one-hundredths ($5,955.61) dollars, which claim was assigned to the plaintiff, and for which the plaintiff asks judgment.

The plaintiff proved on the trial a sale of the goods described in the complaint by the defendant to the plaintiff's assignor, the negotiations therefor having been between the agent of the plaintiff's assignor and a Mr. Field, who was the secretary and treasurer of the defendant corporation, its general manager, and who had general charge of its business at its mills; a contract in writing executed by Mr. Field on behalf of the defendant; the payment by plaintiff's assignor to the defendant of the sum of two thousand ($2,000) dollars on account of the goods purchased; its receipt by the defendant corporation, and the fact that the money was actually used by that corporation for its own purposes.

The defense to the action was that Field had no power to make this contract. It appeared that Field resided at the place where the defendant corporation had its place of business, generally managed its business, made sales for the corporation of its manufactured goods and purchased the raw materials used in such manufacture, had charge of the bank account of the corporation, and drew all checks drawn by the corporation. The other two stockholders and directors of the corporation did not reside at High Point, North Carolina, where the business of the corporation was carried on, took no part in the general management of its works, and did not make either purchases for it or sales on its account. The evidence of the defendant conclusively shows that all sales of manufactured goods made at the mills were made by Field; that he fixed the price of the goods and the terms of sale, and that he conducted the correspondence, and generally had charge of the defendant's business, and that his authority to make sales of the defendant's goods had never been questioned. Plaintiff testified that he had known of many sales made by Field as an officer of the corporation, which had been complied with by the corporation.

The defendant, to sustain the defense, introduced in evidence a by-law of the company, which provided that the president should sign all contracts by which a greater liability than two hundred ($200) dollars is assumed or undertaken, and a section of the Code of North Carolina (§ 683), which provides that "every contract of every corporation, by which a liability may be incurred by the company exceeding one hundred dollars, shall be in writing, and either under the common seal of the corporation or signed by some officer of the company authorized thereto."

The by-law of the company does not stand in the way of a recovery by the plaintiff in this action. It is conceded that Field had the general management of the company, and made all of its sales. He was the owner of two-thirds of the stock of the company, and the only officer who lived at the place where the mills were situated, or who attempted to attend to the business affairs of the corporation. The corporation had certainly clothed him with apparent, if not actual, authority to sell its goods, and the sale of these goods to the plaintiff's assignor was a valid sale, and binding upon the defendant without the written contract. Irrespective, therefore, of the

power of Field to execute on behalf of the defendant this writing called a contract, Field had power to sell the goods of the corporation for the corporation, exercised that power by making the sale in question, and received from the plaintiff's assignor a portion of the consideration. Having the power to make the sale and to receive the consideration therefor, the fact that he executed on behalf of the corporation the written acknowledgment of the contract which he made on its behalf, certainly did not tend to invalidate the sale which he had actually made, a part of the consideration therefor having been actually received.

But if the contract in writing was necessary to bind the defendant, we think that Field's authority was at least a question for the jury. It is undisputed that Field was the secretary and treasurer of the company, having sole management of its mills, making its sales and purchases, and appearing to the public as its sole representative. He had made many sales prior to this time as an agent of the company, none of which had ever been repudiated. There was no apparent limitation upon his power to make contracts for the sale of the company's manufactured goods; and when he, as an officer of the company, acting within the scope of the apparent authority conferred upon him to sell the company's goods, made a contract of sale, reduced it to writing, and received a part of the consideration for the use of the company, he certainly was acting within the scope of the apparent authority conferred upon him. Having actual authority to make the sale, there was nothing to show that he had not the authority, also, to sign the contract evidencing the sale which he had made. He was thus clearly acting within the scope of the apparent authority conferred upon him by the corporation, and any one acting in good faith and without notice of any limitation of his authority, was entitled to rely upon the apparent authority thus given to the agent as the actual authority under which he acted.

We think it clear that, upon the verdict of the jury, the defendant was bound by the contract to sell the goods therein mentioned, made by Field on behalf of the company.

Whether or not Field was authorized to insert in the contract the other clauses restricting the right of the defendant to sell to other persons is not material, as no attempt was made to enforce this cove-

nant in this action, and no damages were allowed for a breach thereof.    There is, however, in the by-laws introduced in evidence on behalf of the defendant, which, it is claimed, limited the power of Field to act for the company, no provision limiting Field's power. It is true the president is to sign all contracts of the company, but the secretary and treasurer is made superintendent of the company's business and affairs, and given supervision of its work and transactions.    There is no provision that a contract signed by other officers than the president should be void or not binding upon the company. The president is given authority to sign contracts for the company, and the secretary and treasurer is made superintendent of the company's business and given supervision of its work and transactions. He would thus be clothed with authority to make all contracts necessary in superintending and supervising the company's business and transactions, and as this transaction in question was clearly a contract in the ordinary course of the company's business of manufacturing and selling merchandise, it would seem to be within the express scope of the treasurer's authority.    The acts of the defendant after the sale in question clearly show that Field's authority to make this contract was not at all disputed, but that its subsequent repudiation by the corporation was an afterthought, when it appeared that the contract was an unfortunate one, and that the corporation could make more money by selling the goods elsewhere.

A question was presented as to whether or not the contract was an absolute one, or subject to the approval of the president of the corporation.    That question was submitted to the jury, who have found against the defendant, and that question of fact is, therefore, settled.    We think that the verdict was sustained by the evidence; that Field having authority to make the contract, the verdict has settled the question of fact as to whether he made such a contract, and that fact being settled, the plaintiff was clearly entitled to recover.

It is not disputed but that the verdict was only for the difference in the market value of the goods at the time when they should have been delivered and the contract price.

The provisions of the North Carolina Code did not apply, because it was found by the jury that Field had authority to make the contract.

We have examined the exceptions to the charge and think none of them well taken. The evidence is uncontradicted that neither of the officers of the corporation, except Field, took any active part in the management or conduct of the business of the corporation.

Some objections were also taken to the admission of evidence, but they are clearly frivolous and do not require notice.

There is here presented a common case where a corporation, having made a contract which subsequent events show is an unprofitable one, endeavors to evade the responsibility that it assumed by claiming that its officers authorized to conduct its business, whose authority had always been unquestioned, had no authority to make this particular contract because the corporation does not wish to carry it into effect. We think the contract was fairly made; that it was made by an officer fully authorized to make it; that it was binding upon the defendant, and that the verdict is not at all excessive, but simply enforces the obligation that the defendant undertook to perform.

The judgment was, therefore, clearly right, and should be affirmed, with costs.

BARRETT, RUMSEY, PATTERSON and O'BRIEN, JJ., concurred.

Judgment affirmed, with costs.