(75 App. Div. 90.)

PEOPLE ex rel. MATHEWS v. WOODRUFF, Lieut. Gov., et al.

(Supreme Court, Appellate Division, Third Department. July 8, 1902.)

1. MORTGAGE—AGREEMENT TO EXECUTE—LAPSE.

An owner of land on which a mortgage was threatened to be foreclosed executed an instrument giving to a creditor a lien on the surplus money for a certain sum in case of foreclosure, and agreeing, if such foreclosure should be abandoned, to execute to him a mortgage on the land for such amount on demand. Held, that the creditor did not lose his right to such mortgage, as against such owner or a subsequent purchaser with notice of the agreement, by failure to demand the mortgage as soon as the foreclosure was abandoned.

**2. SAME—SALE OF LAND—PURCHASER'S KNOWLEDGE OF AGREEMENT—CONTINUↄ ING NOTICE.**

The owner of three parcels of land executed a contract with a creditor to give him a mortgage thereon, on demand, to secure a stated sum. The purchaser of two of the parcels secured releases thereof from such contract, which releases were recorded. Thereafter such purchaser purchased the other parcel, but obtained no release. *Held*, that at the time of the last purchase he could still be presumed to have notice of the contract, and took the conveyance subject thereto.

**3. SAME—STATE—NOTICE—KNOWLEDGE OF LAND COMMISSIONERS.**

Where the land commissioners, while representing the state in acquiring title to land, had notice of an unrecorded lien thereon, the state is bound by such notice, and holds the land subject to such lien.

Certiorari by the state, on relation of Wilbur K. Mathews, to Timothy L. Woodruff, lieutenant governor, and others, constituting the board of land commissioners of the state of New York, to review their determination on an application under Laws 1894, c. 317, § 118. Reversed.

The state bid off certain lands upon the foreclosure of certain mortgages executed by one Bowers to the loan commissioners in and for the county of New York, and took the title thereto. The relator, Mathews, claims that such lands were subject to an equitable lien in his favor for about $2,000, created by an agreement in writing executed to him on March 20, 1899, by Mrs. Romeyn, the grantor of said Bowers; and he applied to the commissioners of the land office, under the provisions of section 18, above cited, for payment to him of such lien. That board, after taking the proofs in the matter, held that such agreement did not constitute an equitable lien upon the premises, and therefore refused his application. This certiorari is taken out to review their decision. The instrument creating such lien is fully set out in the petition in this matter.

Argued before PARKER, P. J., and KELLOGG, SMITH, CHASE, and FURSMAN, JJ.

Henry M. Earle, for relator.

John C. Davies, Atty. Gen., and George H. Stevens, Dep. Atty. Gen., for defendants.

PARKER, P. J. It must be held, I think, that as between Mrs. Romeyn and the relator, in this matter, the agreement of March 20, 1899, should be treated in equity as an equitable mortgage, and that, as against her, it would be enforced as such. It is true that such agreement itself does not purport to create a present lien upon the premises in question, but there is contained in it a distinct and positive agreement to execute a mortgage to secure the $2,000 therein mentioned, in the event that the foreclosure proceedings then threatening to devest her of such lands should for any reason not proceed to judgment. The intent is plain. By the instrument itself she gives to Mathews & Co. a lien upon the surplus moneys that she then expected to receive through the judgment in foreclosure, but if that expectation was not realized, on account of the action being discontinued, she agrees to give him a lien, by mortgage, upon the land itself. And such mortgage is to be given whenever Mathews & Co. shall demand it. I do not agree with the attorney general that such demand was a condition precedent to any liability on Mrs. Romeyn's part under such agreement. Her obligation arose at once,—to give the mortgage whenever she was asked to,—and I discover nothing in such agreement that re-

quired Mathews & Co. to demand the mortgage as soon as the discontinuance of the action occurred. By delay such firm took the chances of some bona fide purchaser intervening; but, so long as no intervening equity arose, they could enforce such promise against Mrs. Romeyn, unless the debt was otherwise discharged. Pom. Eq. Jur. § 1237; Lynch v. Insurance Co., 18 Wend. 236; Husted v. Ingraham, 75 N. Y. 251, 257; Deeley v. Dwight, 132 N. Y. 59, 64, 30 N. E. 258, 18 L. R. A. 298; Kribbs v. Alford, 120 N. Y. 519, 524, 24 N. E. 811; Sprague v. Cochran, 144 N. Y. 104, 112, 113, 38 N. E. 1000; Trust Co. v. Clemes, 163 N. Y. 423, 427, 57 N. E. 614; Bank v. Rogers, 166 N. Y. 380, 390, 59 N. E. 922. If Bowers was a bona fide grantee for value, and if the commissioners of the loan office were bona fide mortgagees, then this equity could not be enforced against the premises. Bowers in that event would have acquired through his conveyance from Mrs. Romeyn a title to the premises freed from the lien above suggested. So, also, if Bowers had acquired such a title, the loan commissioners, although they had notice of such equity, could rely upon that title, and hold the premises acquired from him. Pom. Eq. Jur. § 754.

It is averred in the petition, and not disputed in the return, that the commissioners, when they took the mortgages from Bowers, had actual notice of the instrument of March 20, 1899; and so, of course, they had notice of the agreement by which such equity is created. But there is no charge in such petition that Bowers had such notice when he took his conveyance from Mrs. Romeyn, and the burden is upon the one who claims the benefit of such outstanding equity to establish that the one who claims under the record title had notice of such equity. See Brown v. Volkening, 64 N. Y. 76. But I am of the opinion that the record shows that Bowers, also, had notice of such agreement and equity. The affidavits of Earle and of Davidson, used upon the hearing, show that in June and July, 1899, Bowers had purchased two other parcels of the land referred to in this agreement of March 20, 1899, and had mortgaged them to such commissioners, and that on the application of Davidson, who was then acting as Bowers' attorney, as I understand the statement in his affidavit, the firm of Mathews & Co. released such parcels from the lien created by such agreement, and such releases were put upon record. In the face of that fact, we must, I think, conclude that on August 30, 1900, when he took the conveyance of the remaining part of such premises, he still had notice of such agreement, and that, unless released, such parcel, also, would be subject to such lien. Such deed was taken to Bowers on the 30th, and the mortgages executed on the 31st. Evidently it was one transaction, and the commissioners took the title upon the understanding that Mathews' debt had been paid, and that a release for this last parcel was not necessary. When one of the commissioners afterwards ascertained that the debt was not paid, and tried to get the release, he stated these facts to Mathews' attorney. This appears from the affidavit of Earle, and is not contradicted. We must conclude then, that both Bowers and the commissioners had actual knowledge of this agreement creating this equitable lien, and that neither took the title to these premises as purchasers in good faith. The lien was, and still

is, a prior one to their title; and, inasmuch as the commissioners represented the state in acquiring the title to such lands, the state now holds such title subject to such lien.

These conclusions require that the determination of the commissioners of the lar 1 office be reversed, with $50 costs and disbursements. All concur.