(43 Misc. Rep. 546.)
MATTHEW v. DAMAINVILLE et al.

(Supreme Court, Special Term, New York County. May, 1904.)

1. EQUITABLE MORTGAGE.

> The owner of an equity of redemption in certain premises, subject to mortgages in process of foreclosure, made a written agreement with the creditor that, if the foreclosure suits were discontinued, she would, on demand, execute to the creditor a bond and mortgage on the premises to secure payment of the debt within a stipulated period. *Held* that, upon the discontinuance of the foreclosure suits, such written agreement constituted an equitable mortgage, entitled to record under the real property law.

2. SAME—PRIORITIES.

> After an equitable mortgage was recorded, the creditor executed two separate releases of portions of the land from the lien of the instrument, and a purchaser of the unreleased portion gave a writing declaring that he took title subject to the equitable lien of the mortgage. Thereafter such purchaser executed mortgages and deeds covering portions of the unreleased portion of the premises. *Held*, that the rights acquired under such mortgages and deeds were subordinate to the lien of the equitable mortgage, though they contained no reference thereto.

Action by Wilber K. Matthew against Ludovic A. Damainville and another to foreclose a mortgage. Decree for plaintiff.

Henry M. Earl, for plaintiff.
F. R. Minrath, for defendant Damainville.
Hoadly, Lauterbach & Johnson, for defendant Decker.

McCALL, J. In the year 1899 there were pending two foreclosure suits against property situate in what is now the borough of the Bronx; said property fronting on what is called "Aqueduct Avenue," and located on the south side thereof, east of what is now 190th street. The title to the property was then in one Harriette S. D. Romeyn. She at this time was indebted to the firm of Matthews, Grange & Co. in the sum of $2,000, and, for the purpose of securing the payment thereof, she delivered to them an instrument in writing whereby she agreed to pay to said firm of Matthews, Grange & Co., out of any money due to her, resulting from the aforesaid foreclosures, the amount of her indebtedness to them; and by same instrument it was further agreed that, if the foreclosure proceedings were set aside or discontinued, she would, upon demand, execute a bond and mortgage to secure the payment to said firm within six months of the amount due to them. This writing was duly recorded in the register's office of the county of New York, in Block Series Mortgages, section 11, Liber 50, page 311, and indexed in blocks Nos. 3214 and 3215 of the land map of the city of New York. On June 21 and July 10, 1899, respectively, both of these foreclosure proceedings were discontinued. In December, 1900, Matthews, Grange & Co.'s interest passed to the plaintiff herein, who demanded the bond and mortgage called for by said agreement; and, it not being produced, he demanded payment of amount due. From the discontinuance of these suits, the subsequent history of the title is a short story, and quickly told.

We may at the outset state that we are relieved from construing the nature of this instrument, recorded in Liber 50 of Mortgages, because

the Appellate Division of the Third Department has already denom-
inated it an "equitable mortgage." In the year 1899 Matthews, Grange
& Co., on two separate occasions, released the premises affected by this
agreement from the burden of it as a lien—once to Mrs. Romeyn her-
self, and on the other occasion to her grantee, one Bowers. The por-
tion not so released she conveyed to George W. Bowers, and he in turn
mortgaged it to the Loan Commission of the United States; the latter
having actual knowledge of the existence of the agreement, aside from
that given by its being recorded, because releases from the effect of
the same as to certain parts were delivered on the closing of title, in
the loan to Bowers, but the said releases did not affect that part of the
premises the subject of this action. These mortgages were subsequent-
ly foreclosed, and title vested in the state, and it afterward conveyed
the property to one L. A. Damainville. The instrument vesting the
title in the latter contains no reference to the Romeyn agreement,
but Damainville, by a separate instrument, which is not recorded, de-
clared that he took the title subject to whatever prior rights the
then owners of said agreement had. Damainville subsequently ex-
ecuted two mortgages to one Emma Decker—one dated November,
1901, for $7,000, and one dated May, 1902, for $7,500—and inter-
mediate these two periods he conveyed, after a sale at public auction,
a portion of the affected property to said Emma Decker. Not one of
these three instruments contains any reference to the said Romeyn
agreement, and thus outlined stands the title to this piece of property
to-day, when the question is presented to the court in this litigation
as to whether the defendant Decker's two mortgages, and her title to
the fee in the portion conveyed to her as set out above, are subordinated
to the lien of the Romeyn agreement, now determined to be an equi-
table mortgage, or whether, through the alleged fact of Mrs. Decker
not being charged with personal notice of the existence of such an
agreement, these holdings are prior to and paramount in their relations
to such instrument, as the latter may or may not affect the title. Of
actual personal notice to every holder in this chain of title from the
maker of the agreement, Mrs. Romeyn, down on through Bowers,
the state, and Damainville, apart and aside from that given by record-
ing the document, there cannot exist the slightest doubt. Bowers re-
ceived directly and personally releases from the operation of said in-
strument as it affected his title. The loan commissioners were evidently
conversant with it, because releases from the effect of same instrument
passed before them when they made the loan to Bowers, and, when
the foreclosure suit ensued and the state, becoming vested with the
title, sought to convey it, we find its grantee, Damainville, executing
an instrument declaring he took the title subject to whatever lien its
existence created, showing the state was protecting itself against its
grantee, and he (the grantee) acknowledging the existence of the in-
strument, and his willingness to take a burdened title if it established
a lien; and this brings us right down to Mrs. Decker. It is true, as
to her, that neither of the three instruments by which she became in-
terested in the title mentions this Romeyn agreement, but the evidence
in the case shows clearly that, after the sale at auction of the piece Mrs.
Decker bought, her attorney received notice of this lien, and wrote to

a Mr. Earl in reference to same, and, two days before he closed his title, received a reply from Mr. Earl to the letter he had sent him. This conveyance, it must also be borne in mind, antedated the second mortgage of $7,500 given by Damainville to Decker, but was subsequent to the first mortgage of $7,000 between same parties; and it is true that the attorney, in his testimony, states that he will not swear this information was in his mind when he closed title on the second mortgage.

It will thus be seen, in my judgment, that to every holder of, or person interested in, this title, there came personal notice of the existence of this agreement, aside from the mere record notice. That this has been proven, in my mind, admits of little doubt—certainly not any as to all save Mrs. Decker; and I have but little doubt that, from the knowledge her attorney had, and with which she might be properly chargeable under the circumstances, in her case personal notice was given to her also. But beyond all this, and back of it all, and causing this instrument to cast its shadow over all this title, is the fact that it was recorded, and said record antedates the time of the vesting of the interest of defendants; and how they can escape that, or how, admitting it to be a fact that the agreement was recorded prior to their being vested with the interest, they can assert they were without notice, is something I cannot comprehend. Certainly the instrument comes within the terms of the recording act. It has been declared by our courts to have been an equitable mortgage (People v. Woodruff, 75 App. Div. 90, 77 N. Y. Supp. 722), and the real property law says a conveyance of real property within the state, on being properly acknowledged, may be recorded; and the same law, defining "conveyance," says it "includes every written instrument by which any estate or interest in real property is created, transferred, mortgaged or assigned, or by which the title to any real property may be affected." Real Property Law, p. 607, §§ 240, 241 (Laws 1896, c. 547). As we have seen, this Romeyn agreement was recorded in April, 1899. The Damainville and Decker interests were not acquired till the year 1901, and thereafter, so that they took subject to the lien of this instrument.

The only remaining question to consider would then be as to whether there were such laches in the enforcement of the claim as to warrant a decree against its enforcement. Far from being guilty of delay, commendable alertness has been demonstrated, and nothing remains but to decree foreclosure and sale. I will hear counsel as to form of decree.

Ordered accordingly.