ALVIN C. ERNST et al., Plaintiffs, v. CARY SAFE COMPANY, Defendant.

(Supreme Court, Erie Trial Term, December, 1920.)

Corporations — when president of a corporation has neither express nor implied authority to make an audit — actions — verdict.

The president of a domestic manufacturing corporation, desirous of learning definitely the condition of its affairs before exercising an option to purchase the holdings of his associate stockholders, arranged with plaintiffs, a firm of professional accountants, to make an audit. An expert accountant was sent to the office of the corporation to make the audit, but the treasurer told him that it must be understood that the examination of the books of the corporation was the president's personal affair. The accountant went over the corporation's books but his report reached no officer or director, except the president. The corporation, upon presentation of a bill for making the audit, promptly repudiated liability therefor and informed plaintiffs that they must look for their pay to the president, who about that time died. In an action to recover against the corporation for the amount of the bill, upon proof by defendant that the board of directors had never ordered any audit of the company's books; that none of the directors had personal knowledge of the ordering of an audit on account of the company, either before or after the audit was made; that

no audit had been made during the thirty-two years of the company's existence; that there was no reason why the company should have made one for itself; that such an audit was outside of and beyond the ordinary business of the company; that under the by-laws the custody of defendant's books was committed to the treasurer, subject to the control of the board of directors, and that by said by-laws the president was not authorized to bind the company by any such engagement as the plaintiff claimed the president had made, the court directed a verdict for the defendant. Upon denying a motion for a new trial, *held,* that the president of defendant, by virtue of his office, had neither express nor implied authority to employ the plaintiffs to make the audit for the corporation, and that the direction of the verdict in favor of defendant was proper.

MOTION by plaintiff for a new trial after the direction by the court of a verdict for the defendant at the close of all the evidence.

Ralph S. Kent, for plaintiffs.

Carlos C. Alden, for defendant.

WHEELER, J. The plaintiffs are a firm conducting the business of professional accountants, having offices in various cities of the country, and among others, an office in the city of Buffalo in charge of a local manager.

The defendant is a manufacturing corporation carrying on its business in the city of Buffalo. Mr. R. B. Hamilton, prior to his death, was the president of that company. He resided at St. Catherines, Ont., occasionally visited Buffalo, presided at meetings of the board of directors of the corporation, and presumably gave his counsel and advice as to the policy and management of its affairs, but beyond that, the evidence shows, took no part in the actual conduct of its business. A time came when Mr. Hamilton contemplated the purchase of the stock of his associate stockholders,

and obtained from certain of them options for such a purchase. Before exercising his option Mr. Hamilton desired to learn more definitely the condition of its affairs, and to that end wished an audit made. He called at the local office of the plaintiffs, saw its local manager, presenting his business card describing himself as president of the Cary Safe Company, and arranged with the manager for the making of an audit. The local manager sent an expert accountant to the defendant's office to make the audit. He asked the treasurer of the company in charge of the books for them for the purposes of the audit. The treasurer of the company then and there stated to the accountant, in substance, that he might examine the books, but it must be understood that such an examination was Mr. Hamilton's personal affair, and not that of the company. This was tantamount to telling the accountant the company would not be responsible for the cost of the audit. At least it was such notice to the accountant as put him on inquiry. This evidence is uncontradicted, although the accountant was in the city and subject to call as a witness at the time of this trial. Whether the accountant ever reported to the manager of the plaintiffs' local office what was said to him by the treasurer of the defendant does not appear. However that may have been, the accountant proceeded with his work, went over the company's books, made his report to the manager of the plaintiffs' local office, and a formal report was prepared and mailed or sent addressed to the defendant, "Attention of Mr. R. B. Hamilton."

This report, the evidence tends to show, never reached the hands of any officer or director of the company, except those of Mr. Hamilton. Subsequently a bill for making the audit was rendered the defendant, whereupon the liability of the company was promptly

repudiated, and the plaintiffs were informed they should look to Mr. Hamilton for their pay. Mr. Hamilton about this time died, and the plaintiffs seek in this action to recover from the safe company the amount of their bill for services rendered.

The defendant produced evidence on the trial showing that the board of directors had never ordered any audit of the company's books; that none of the directors had any personal knowledge of the ordering of an audit on account of the company, either before or after the audit was made; that no audit of the company's books had been made during the thirty-two years of its existence, and there was no known reason why the company should have one made for itself; that such an audit was outside of and beyond the ordinary business of the company; that under the by-laws of the company the custody of the defendant's books was committed to the treasurer of the company, subject to the control of the board of directors, and that by such by-laws no authority was given the president to bind the company by any such engagement as the plaintiffs claimed Mr. Hamilton made.

Upon this showing the trial court directed a verdict for the defendant, and now reviews its action upon a motion by the plaintiffs for a new trial.

The court is satisfied that Mr. Hamilton by virtue of his office as president had no express or implied authority to employ the plaintiffs to make an audit for the defendant.

The general rule governing the powers of a president of a corporation is properly stated in 10 Cyc. 903, where it is said: " The office itself, however, confers no power to bind the corporation or control its property. The president's power as an agent must be sought in the organic law of the corporation, in the delegation of authority from it, directly or through

Supreme Court, December, 1920.     [Vol. 113.

its board of directors, formally expressed or implied from a habit or custom of doing business." See cases there cited.

It is here contended by the defendant there was no such delegation of powers to its president.

The plaintiffs' counsel, however, contends that while the defendant's president may have had no actual authority to hire the plaintiffs to make the audit, nevertheless that such an act was within the scope of his apparent authority, and the plaintiffs had the right to assume he had such authority, and to deal with him accordingly in the absence of any notice on their part of any limitations of the right of the president to represent the company.

The rule contended for by the plaintiffs was stated by Mr. Justice Ingraham in *Powers* v. *Schlicht Heat & Power Co.*, 23 App. Div. 380, as follows: "A business corporation organized for the transaction of ordinary business must have some agent or representative who is authorized to transact such business. The president of the company, its principal executive officer, is impliedly vested with such authority; and in the absence of express notice, a person dealing with such corporation is entitled to assume that in the ordinary transaction of its business the president is authorized to act for it, and the corporation is liable for contracts made in the conduct of its business. *Rathbun* v. *Snow*, 123 N. Y. 343; *Cone* v. *Empire Plaid Mills*, 12 App. Div. 314."

In the case of *Lyon* v. *West Side Transfer Co.*, 132 App. Div. 777, Justice Clarke said: " It is the law that acts done by the executive officers of a corporation within the apparent scope of their authority in regard to the regular business of the corporation are presumed to be the acts of the corporation and binding upon it, and the person dealing with such officers,

under such circumstances, is not required to prove specific authority from the board of directors and is not affected by any secret provisions of the by-laws not brought to his attention.''

Generally it may be said that third persons dealing with a corporation have a right to rely upon the apparent authority of its officers and agents, and are not bound by provisions of by-laws or minutes not brought to their attention. *Bacon* v. *Montauk Brewing Co.,* 130 App. Div. 737; *Lyon* v. *West Side Transfer Co.,* 132 id. 777; *Powers* v. *Schlicht Heat & Power Co., supra; Warfield* v. *Wire Wheel Corp.,* 184 id. 687.

In the last cited case the rule was applied to a case where the president ordered an audit, but there the president was also the general manager and active head of the corporation, and given authority by the by-laws to appoint and discharge agents and employees.

The defendant here contends that Mr. Hamilton, in fact, exercised none of those powers, and never had, and that the plaintiffs had no right to assume he possessed such authority by any act he had done prior to his visit to their office, and that the making of an audit was, under the circumstances, a thing so outside the usual and ordinary course of business that the plaintiffs had no right to assume the president had any authority in the premises.

It is possible that the evidence presented a question of fact for the determination of the jury whether the nature of the audit and the course of business was such that the plaintiffs had a right to rely on any apparent authority in the defendant's president. The question so presented is to our mind a very close one, in which minds may well differ. Whether within the president's apparent authority or not, we do not think

40

need be decided at this time in view of other features of this case.

The right of third parties to rely on the apparent authority of corporate officers is subject to the condition that such third parties have no notice or knowledge of a limitation on such authority.

The evidence in this case involves the question as to whether the plaintiffs are to be deemed as having had notice that the work to be done was to be done for Mr. Hamilton personally, and not for the defendant.

As we have stated earlier in this opinion, the plaintiffs' local manager sent accountants to the defendant's business office to examine its books. They asked permission to see them. The treasurer of the defendant there in charge informed the senior accountant, in substance, that while he might have the books to examine, it must be understood that such an examination was Mr. Hamilton's personal affair, and not that of the company. This testimony by the treasurer was corroborated by the bookkeeper of the defendant and was in no way contradicted on the trial, and for the purposes of this motion we must accept it as true. So this accountant designated to make the actual audit ordered, had notice (or at least was put on his inquiry) that the work to be done was not for the company, and it did not propose being held liable for its cost.

If this notice given to the senior accountant is to be deemed notice to the plaintiffs, or to their local manager, then plaintiffs' case against the defendant must fail.

The senior accountant and his assistant were but agents of the plaintiffs charged with doing the actual work agreed to be done. When they went to the defendant's office there had been nothing done on the audit. What was done was done after the notice in question was given.

In the case of *Ingalls* v. *Morgan,* 10 N. Y. 184, the Court of Appeals has said: " Where an agent comes to the knowledge of a fact while he is concerned for the principal, this operates as constructive notice to the principal himself; for, upon general principles of policy, it must be taken for granted that the principal knows whatever the agent knows."

At 31 Cyc. 1587, the rule is thus stated: " The duty of an agent to inform his principal of all material facts is a duty which the law conclusively presumes the agent has performed, and a principal is therefore affected with knowledge of all material facts of which the agent receives notice or acquires knowledge while acting in the course of his employment and within the scope of his authority, although the agent does not in fact inform the principal thereof." Citing many authorities in this and other states. Among those cited in New York are: *Bennett* v. *Buchan,* 76 N. Y. 386–390; *People* v. *Woodruff,* 75 App. Div. 94; *Hier* v. *Odell,* 18 Hun, 314; *Sutton* v. *Dillaye,* 3 Barb. 529; *Canada* v. *Casey,* 14 Misc. Rep. 322; *Peters* v. *Stuart,* 2 id. 358; *Jackson* v. *Sharp,* 9 Johns. 163; *Griffith* v. *Griffith,* 9 Paige Ch. 315; *Kendall* v. *Niebuhr,* 45 N. Y. Super. Ct. 552, 553.

That notice to agent need not have been actually brought home to principal is held in *Dillon* v. *Anderson,* 43 N. Y. 232; *Lockwood* v. *Dillenbeck,* 104 App. Div. 71; *Gardner* v. *Pitcher,* 109 id. 106; *Williamson* v. *Brown,* 15 N. Y. 354; *People* v. *Woodruff,* 75 App. Div. 94, although it is the duty of the agent to disclose information he possesses pertinent to his agency. *Rocky River Development Co.* v. *German American Brewing Co.,* 193 App. Div. 200. In this case, we think the notice given the senior accountant that if the defendant's books were audited, the audit must be understood to be for the personal account of Mr. Ham-

ilton, must be deemed notice to the plaintiffs that the defendant would not be liable for the cost of such an audit. At least it put the plaintiffs and their agent upon inquiry as to their right to charge the defendant with the expense of an audit, and where one has knowledge of any fact sufficient to put him on inquiry as to a right in conflict with his own, he is presumed either to have made the inquiry, or to have been guilty of negligence equally fatal to his claim. *Bennett* v. *Buchan,* 76 N. Y. 390; *Williamson* v. *Brown,* 15 id. 354.

It may possibly be urged that the arrangement for the audit was made with the defendant's president before the plaintiffs had any notice, constructive or otherwise, that the audit ordered was for the personal benefit of Mr. Hamilton, and was not an affair of the defendant's, and therefore the liability of the defendant should and could not be impaired by knowledge or notice subsequently received. It is true that as the case is presented by the record, the talk between the accountant and the defendant's treasurer was had after Mr. Hamilton had ordered the audit made, but up to that time no work whatever had been done on the audit itself. So far as appears, the entire bill for which this action was brought is for labor and services rendered after notice was in fact given.

We think it can hardly be claimed that after the plaintiffs had been given notice through their agent that the defendant would not become liable for the cost of an audit, the plaintiffs could, notwithstanding, proceed with work and charge the defendant with the cost thereof. If after such notice the plaintiffs chose to proceed, we think they did so at their own hazard.

We may assume the plaintiffs agreed to make the audit in good faith, and in ignorance of any want of authority on the president's part to order it, but before proceeding with the work, notice was given the plaintiffs

that the order given was for Mr. Hamilton's personal benefit, and the defendant would not become liable for the expense. In other words, the defendant repudiated the contract and gave notice it would not be bound by it.

Under such circumstances what were the rights and duties of the parties? Certainly the plaintiffs had no right to proceed as though no rescission or cancellation had taken place. While the party repudiating may become liable under such circumstances for the damages suffered by the rescission, nevertheless the duty rests on the other party on receiving such notice, to save the former, as far as is in his power, all further damages. *Dillon* v. *Anderson,* 43 N. Y. 232; *Parsons* v. *Sutton,* 66 id. 92; *Wright* v. *Bank,* 110 id. 245; *Milage* v. *Woodward,* 186 id. 257; *Mendell* v. *Willyoung,* 42 Misc. Rep. 214.

Applying this rule to the circumstances of the case in hand, we see that after notice in question was given, the plaintiffs could not proceed to pile up expense and cost on the strength of the contract rescinded, but could simply claim the right to be made good for any loss or damage naturally sustained. So far as appears, no actual expense up to the time of rescission had been incurred by the plaintiffs, and no actual damage sustained.

The plaintiffs might possibly have made a profit out of the audit ordered, over and above the cost to themselves, but there is no evidence in the case what such profits would have been.

We think that the trial court was right in directing a verdict in favor of the defendant at the close of all the evidence.

The motion for a new trial is, therefore, denied.

Motion denied.