(72 App. Div. 331.)

CROOKS v. PEOPLE'S NAT. BANK OF MALONE.[1]

(Supreme Court, Appellate Division, Third Department. May 7, 1902.)

1. BANKRUPTCY—PREFERENCE.

A firm had overdrawn its account with a bank to the extent of $2,600. The senior partner of the firm was the president of the bank. The bank held as collateral security water bonds of the value of $2,000. A son of the senior partner executed a note, which was indorsed by a third party, and which was given to the bank to pay for the overdrafts, and the bank then surrendered to the firm the water bonds. The senior partner transferred a mortgage to his son as security for such note. The firm and the senior partner filed their petitions in bankruptcy within four months of the execution of the mortgage. Held, that the giving of the mortgage did not constitute a preference, within the bankruptcy act.

2. SAME.

Defendant bank discounted for a firm drafts accepted by an insolvent. To secure the bank, the acceptor executed his note, which was indorsed for accommodation by a responsible third person. The senior partner of the firm procured the indorsement upon his agreeing to give security therefor, which was done by the delivery to such indorser of certain securities. The firm then indorsed the note, and delivered it to the bank's cashier, who had no reason to believe that a preference was intended. The accommodation indorser acted in good faith, and believed that the senior partner was solvent. The senior partner was also the president of the bank. The firm and the senior partner filed their petitions in bankruptcy within four months of the giving of the securities to the accommodation indorser. Held, in an action by the trustee in bankruptcy, that the transaction constituted a preference, and was therefore void under the bankruptcy act; the knowledge of the senior partner of his and the firm's insolvency being the knowledge of the bank. .

Parker, P. J., dissenting.

Appeal from special term.

Action by George W. Crooks, as trustee in bankruptcy of Howard, E. King, and of the firm of H. E. King & Son, against the People's National Bank of Malone. From a judgment dismissing the complaint (70 N. Y. Supp. 271), plaintiff appeals. Reversed.

The action is brought to set aside certain transfers of personal property made by Howard E. King to the defendant, or for its benefit, on the ground that such transfers created unlawful preferences under the bankrupt law. H. E. King & Son was a partnership, composed of Howard E. King and William H. King, his son. Of this partnership Howard E. King was the responsible member, and he was also at all times, until he went into bankruptcy upon the 16th day of February, 1899, the president of the defendant bank. On the 4th day of February, 1899, the firm had overdrawn its account in the said bank to the extent of about $2,600. In part to pay that overdraft, one John H. King, another son not in the partnership, made his note for $3,100 to H. D. Tompson, who indorsed the same, and deposited it in the bank to the credit of the firm. The bank thereupon surrendered to Howard E. King some water bonds, which it held as security for the firm's overdraft, of the value of about $2,000. To secure John H. King for his note, made for the benefit of H. E. King & Son, Howard E. King assigned to him a bond and mortgage which he held upon the house of W. H. King. This transfer is claimed to have been in fraud of the bankruptcy law in creating indirectly a benefit to the bank to the extent of the overdraft, which was paid by the note of John H. King. To recover from the bank the benefit claimed to have been received by reason of this transfer is the second cause of action alleged in the plaintiff's complaint.

[1] For dissenting opinion, see 76 N. Y. Supp. 495.

H. E. King & Son had for a long time been dealing in hops. The pur-
·chase price of these hops was paid by moneys obtained from the defendant
·bank upon 60-day drafts drawn by H. E. King & Son upon one Searls, and
by him accepted. There was no other security for the payment of these
drafts than the liability of H. E. King & Son, and of Searls, who was prob-
ably insolvent. On the 14th day of February, 1899, two days before the in-
solvency, this overdraft amounted to a little upwards of $12,000. Upon that
·day a note was made by Searls, which was by Howard E. King procured to
be indorsed by one Paddock, who was financially responsible. That note,
after its indorsement by H. E. King & Son, was deposited in the defendant
·bank, and the acceptances, theretofore held by the bank, were surrendered
up. To secure Paddock for his indorsement of that note, Howard E. King
transferred to him some bank stock and water stock, of the value of about
$10,000. The plaintiff claims that this transfer was made in fact for the
benefit of the defendant, and creates a fraudulent preference under the
bankrupt act, and to the extent of the value of this bank stock and water
stock the defendant has received a benefit for which it should account to
·the plaintiff as trustee. This constitutes plaintiff's first cause of action. The
·action was tried before the court without a jury, and the complaint dis-
missed. From the judgment entered upon this decision this appeal is taken.
·Further facts appear in the opinion.

Argued before PARKER, P. J., and KELLOGG, SMITH,
·CHASE, and FURSMAN, JJ.

John P. Badger, for appellant.
Martin E. McClary (John P. Kellas, of counsel), for respondent.

SMITH, J.   The transfer of property by an insolvent is obnoxious
to the provisions of the bankrupt law only when the transfer was
made with an intention to create a preference, and the person bene-
fited thereby has reasonable cause to believe that a preference was
intended.   The fact that the overdraft of $2,600 was at the time
substantially secured by the water stock of Howard E. King, which
was held as collateral thereto, would give full warrant to the find-
ing of the trial court that the transfer of the mortgage to John H.
King was not made with the intent to create a preference for the
benefit of the bank.   It is true that the overdraft was somewhat in
excess of the security which the bank already held, but the excess
was slight, and the nature of the transaction was such that we think
a finding to the effect that the mortgage was given with an intent
·to create a preference would be unsupported by the evidence.   As to
the second cause of action, therefore, we are of opinion that the
·complaint was properly dismissed.

As to the first cause of action a more difficult problem is pre-
·sented.   These drafts drawn by H. E. King & Son upon Searls,
and by him accepted, amounting to upwards of $12,000, were not
secured.   They were confessedly, in part, worthless.   In their place
·was substituted a note, made good by the indorsement of Paddock.
That indorsement was obtained by the transfer from Howard E.
King of these securities.   This fact is of irresistible inference.   Pad-
dock was asked to indorse upon security given.   At the time of the
·indorsement he asked about the security.   Whatever statement he
may have made as to his willingness to indorse, with or without
security, the indorsement was in fact made upon consideration of
·the transfer of these securities.   Paddock's good faith is not ques-

tioned, nor his belief in the solvency of King. No attempt is made to take from him the securities. If securities had been transferred directly to the bank to secure these acceptances, with an intent to create a preference, and the bank had reasonable ground to believe such was the intent, such transfer would be clearly obnoxious to the provisions of the bankrupt law. It is claimed, however, that instead of this direct method an indirect method was adopted to accomplish the same result, to wit, a responsible indorser was furnished to whom the securities were transferred. The effect is to substitute good paper for bad, and, to the extent to which such substitution was obtained by the transfer of the bank stock and water stock, it is insisted the preferred creditor should refund to the trustee the advantage obtained by this indirect preference. In this view of the case it becomes immaterial as to what right the bank would have in security held by an indorser, and as to whether the bank would have any right thereto in case of the solvency of the indorser. It also seems to me immaterial whether Paddock had waived protest, or had been charged by protest, or even whether he had paid the note. If a preference can be thus indirectly given through the medium of an innocent indorser, who is secured, the limitations of the bankrupt law are practically without effect. That such a transfer is within the prohibition of the bankrupt law has been settled by this court by its decision upon review of an interlocutory judgment sustaining a demurrer to the plaintiff's complaint. See case reported in 46 App. Div. 335, 61 N. Y. Supp. 604.

The trial court held, however, that King's knowledge was not the knowledge of the bank. It was found as a fact that one Marshall, the cashier of the bank, acted in these negotiations for the bank, and that neither he nor the bank had reasonable ground to believe that King was insolvent. But the bank's ignorance of the preferential intent of King can only be sustained upon the holding that King's knowledge was not the knowledge of the bank. If King's knowledge is in law imputable to the bank, then the plaintiff would seem to have established an intentional preference by King, and full knowledge of such intentional preference by the defendant, a party benefited thereby.

An agent owes a duty to his principal to disclose to him any information which he may have which may be relevant to that agency. The law conclusively presumes that the agent makes such disclosure, unless the agent has some private purpose to accomplish, the accomplishment of which would be imperiled thereby. No such purpose is here apparent. King was the chief officer of the bank. Upon insolvency his first thought would be to protect the institution of which he had so long been the head. He was asking no favor of the bank the granting of which would be imperiled by knowledge of his insolvency. This was his last unsecured debt which he was securing. He was substituting demand paper for his obligations, part of which were not yet due. Even if its probable effect was to give King further time, although demand paper was given, the greater advantage was to the bank, in which was substituted good paper for poor. Marshall was not alone acting for the bank. If act-

ing for himself, King was acting equally, if not in a greater degree, for the bank. The case is not one in which the agent was negotiating at arm's length for his own advantage. Knowledge of his insolvency would only have made the bank the more willing to accept the substituted paper. It is true that a disclosure of his insolvency would render precarious the holding by the bank of the benefit intended to be given,—no more so, however, than the disclosure by any agent of the insolvency of a third party who was endeavoring to prefer the principal. In the case of a third party the knowledge of the agent would be confessedly imputed to the principal. When the insolvency is that of the agent himself, and there is no personal advantage to be gained by concealment, no reason is apparent why the agent's knowledge is not in like manner imputable to the principal. And this conclusion is, I think, in accord with authority.

Without considering in detail the cases cited by the learned trial judge, it may be said, generally, that in all these cases in which it was held that the knowledge of the agent was not imputable to the principal the agent was acting in his own interest, and against the interest of the principal, to secure some personal advantage to himself. These facts bring the cases within the recognized exceptions to the rule. In support of our conclusion the case most nearly akin is that of Nisbit v. Trust Co. (C. C.) 12 Fed. 686. In that case a firm in which was the president and cashier of a bank assigned to the bank, within less than four months of insolvency, some bank stock as security for indebtedness. It was held that the knowledge of the president and cashier of the insolvency of the firm was the knowledge of the bank, and the assignee in bankruptcy could recover back. See, also, Bank v. Davis, 2 Hill, 451; Holden v. Bank, 72 N. Y. 291; Bank v. Blake (C. C.) 60 Fed. 78; Getman v. Bank, 23 Hun, 498; Wilson v. Pauly, 18 C. C. A. 475, 72 Fed. 129–135; Loring v. Brodie, 134 Mass. 453.

If these views be correct, the plaintiff is entitled to a reversal of the judgment.

Judgment dismissing complaint as to first cause of action therein stated reversed on law and fact, and new trial thereof granted, with costs to appellant to abide event. All concur, except PARKER, P. J., who dissents.

---

(71 App. Div. 559.)

### JORDAN et al. v. UNDERHILL.

(Supreme Court, Appellate Division, First Department. May 9, 1902.)

ACTION FOR ACCOUNTING—REFERENCE.

In an action for an accounting, where the right thereto was made an issue, a reference to take and state the accounts between the parties should not have been ordered until it had been determined by an interlocutory judgment that the plaintiffs were entitled to an accounting; and until this question had been determined the court had no power to refer.

Appeal from special term, New York county.

Action by Nina Jordan and another against Edward C. Underhill. From an order referring the issues to a referee, defendant appeals. Reversed.