ment between the parties. It did not purport to substitute the payments therein provided for in place of the alimony granted by the decree. Its effect was to leave that provision for alimony unimpaired, except that the plaintiff, in consideration of a lump sum, agreed in advance to release defendant from the payment of all of each month's allowance except the several amounts specified in the second clause of the contract. These amounts he still remained liable to pay, not because of any new agreement to do so, but because the decree so provided, and as to so much of the prescribed alimony he had not been released. His obligation to pay rests upon the decree. His partial release from that obligation is all that can be found in the contract, by which he expressly reserves to plaintiff the right to enforce payment of her alimony; i. e., so much thereof as she had not released, in any manner which the law shall allow. The contract does not speak of the $5,000 as a prepayment on account of alimony to become due, but, even assuming that it was so intended, the parties carefully provided how it should be applied—that is, in a graded reduction—over a period of 10 years, of the monthly payments prescribed by the decree. But for the agreement the defendant would be required to pay the plaintiff much more than she demands. He cannot interpose the agreement as a shield against full liability, and repudiate it as to the terms upon which such liability was reduced. If he had taken advantage of the authority reserved to him by the contract to apply for a modification of the decree, he surely could have obtained nothing more than a reduction of the monthly payments in accordance with the terms of the contract. He should not be held to less liability now.

The order appealed from should be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs.

INGRAHAM, J., concurs.

---

REPUBLIC LIFE INS. CO. v. HUDSON TRUST CO.

(Supreme Court, Appellate Division, First Department. March 5, 1909.)

1. BANKS AND BANKING (§ 140*)—CONDITIONAL DEPOSITS—TRANSFER—ESTOPPEL.

  T. deposited money to S. Company's credit in defendant bank conditionally. Though the condition never arose, the company drew a check for the amount in favor of plaintiff corporation, and a bank officer who did not know of the condition credited plaintiff with the amount in a passbook issued to it. Before any account was opened on the books, it was discovered that the deposit was not subject to check, and the S. Company was notified within 24 hours, the check was returned, and defendant refused to transfer the account. It does not appear that plaintiff was a bona fide purchaser of the deposit, or that its position was changed to its prejudice between the issuance of the passbook and the notice to the S. Company. Held, that defendant is not bound by the credit indicated by the passbook.

  [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 389, Dec. Dig. § 140.*]

2. BANKS AND BANKING (§ 140*) — CONDITIONAL DEPOSITS — TRANSFEREES — RIGHTS.

Plaintiff is not an innocent purchaser of the deposit, and has no more right to recover the fund than the S. Company if it had actual or constructive knowledge that the company had no right to draw the check.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 389; Dec. Dig. § 140.*]

3. BANKS AND BANKING (§ 140*)—CONDITIONAL DEPOSITS—CHECKS—TRANSFEREES.

Plaintiff was charged with notice of the facts depriving the S. Company of the right to draw the check, since R., who as president of the S. Company was at least presumptively chargeable with knowledge of the condition attached to the deposit, acted for such company in drawing the check and for plaintiff, of which he was also president, in accepting the check.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 389; Dec. Dig. § 140.*]

4. BANKS AND BANKING (§ 140*)—CONDITIONAL DEPOSITS—PRESUMPTIONS— KNOWLEDGE OF LEGAL RIGHTS.

The S. Company is presumed to know that it could not draw on the deposit without a new agreement with T.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 389; Dec. Dig. § 140.*]

5. BANKS AND BANKING (§ 154*)—CONDITIONAL DEPOSITS—TRANSFER—JURY QUESTIONS.

Under the evidence, *held* questions of fact whether defendant intended to and did accept the check unconditionally as cash, and whether the S. Company acted in bad faith in inducing defendant to permit it to check out the fund.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 154.*]

6. BANKS AND BANKING (§ 154*)—CONDITIONAL DEPOSITS—ACTION TO RECOVER —BURDEN OF PROOF.

The burden was on plaintiff to show that it was an innocent purchaser of the deposit for value.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 520; Dec. Dig. § 154.*]

7. BANKS AND BANKING (§ 140*)—CONDITIONAL DEPOSITS—RIGHTS OF DEPOSITOR.

A bank with which money was deposited to the credit of a third party to be paid on a condition imposed for the depositor's benefit could not pay any part of it on the depositor's check until the condition was met.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 380; Dec. Dig. § 140.*]

Appeal from Trial Term, New York County.

Action by the Republic Life Insurance Company against the Hudson Trust Company. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Victor E. Whitlock, for appellant.

Isaac H. Levy, for respondent.

LAUGHLIN, J. This is an action to recover the sum of $5,000, the proceeds of a check drawn by one E. R. Thomas on his account

with the defendant to the order of the Central Life Securities Company, and deposited with defendant to the credit of that company on the 10th day of December, 1906, pursuant to an agreement between Thomas, the securities company, and the defendant, by which it was not to be subject to the check of the securities company or to become its property until the happening of a certain event which has not transpired. Thomas was an officer of the defendant and the securities company had no other account with it and no other funds were deposited to its credit. On the 22d day of April, 1907, the securities company drew a check to the order of the plaintiff on the defendant for the amount of this fund. The check was signed for the securities company by Birch F. Rhodus, its president, and by its treasurer, and at the same time it was indorsed for the plaintiff by Rhodus, its president, to the order of defendant for the purpose of opening an account with defendant in the name of the plaintiff. Rhodus then inclosed the check with a letter to defendant, signed by him as president of the securities company, with which he also inclosed authorized signatures of the plaintiff for the purpose of opening the account, and stated that he had requested one Sutherland to call on defendant and open an account and deposit funds in the name of plaintiff. The letter closed with this statement:

"If your custom in crediting interest on daily balances is satisfactory, I have no doubt that the account of the Republic Life Insurance Company will be a very satisfactory one."

An officer of the defendant, who had no knowledge of the original transaction or of the fact that the fund on which the check was drawn was not subject to be checked out, received the check and inclosures on the 24th day of April, 1907, and Sutherland called on that day and made out a deposit slip for the amount of the check, whereupon the same officer of defendant made out a passbook in the name of the plaintiff, crediting it with the amount of the deposit, and delivered the same to Sutherland, who forwarded it to plaintiff. Before transferring the account from the securities company to plaintiff, or opening any account in the name of plaintiff on the books of defendant, it was discovered that this deposit was not subject to be checked out, and the account was not transferred, and no account was opened in the name of plaintiff. The day after the passbook was issued, the defendant wrote Rhodus, addressing him as president of the securities company, drawing attention to the fact that this fund constituted a conditional deposit, and inclosing a copy of the letter of the securities company delivered to defendant at the time the account was opened, which was addressed to defendant and signed in the name of the securities company by E. T. Rhodus, its vice president. The body of the letter was as follows:

"Please pay over to our company five thousand dollars ($5,000), which we hereby deposit for that purpose upon notification from us that our subscriptions of the Central Life Securities Co. have reached the amount of five hundred thousand dollars ($500,000) and been paid in to that amount."

Rhodus wrote a reply to this letter under date of April 27, 1907, which he signed as president of both companies, and in which he pre-

sumes to explain the letter, a copy of which the defendant transmitted to him, as follows:

"We presume it must have been the idea of Mr. E. T. Rhodus in giving you such a letter, to obtain for this company the favorable influence and good will of your institution until such time as the Republic Life Insurance Company was ready to itself receive funds; but, now, in view of the fact that the funds are being turned over of the Republic Life Insurance Company, and in further view of the fact that it expects to transact considerable business with you, it should have the benefit of your favorable influence and good will from this time on."

It is manifest that this was no explanation for filing the letter with the defendant, and it is perfectly clear that the purpose was, as claimed by the defendant and as will be presently seen, to preclude the securities company from checking out this fund until the happening of the event specified in the letter. The defendant replied to this letter, again calling attention to the fact that the deposit was conditional, and that for that reason the account had not been transferred, and returning the check drawn against the account and upon which defendant had issued the passbook. There is no evidence that the defendant received any reply to this letter. On the 11th day of November thereafter Thomas elected to reclaim the fund upon the ground that the event upon which it was to become the property of the securities company had not transpired, and that a reasonable time for compliance with the conditions had elapsed, and at his request it was credited to his account and a countercharge was made against the securities company to balance its account. On the 21st day of the same month plaintiff drew a draft on defendant for the account indicated by the passbook delivered to it by defendant, which, on being forwarded for collection through the usual channels, was dishonored by defendant on the 23d day of November, 1907, on the ground that there were no funds on deposit with it to the credit of the plaintiff.

I am of opinion that the cases of Oddie v. Nat. City Bank, 45 N. Y. 735, 6 Am. Rep. 160, and Kirkham v. Bank of America, 165 N. Y. 132, 58 N. E. 753, 80 Am. St. Rep. 714, relied upon by respondent, are not controlling. In those cases the intention to give the credit and create the relation of debtor and creditor was regarded as clear. In the former case the check was credited to a customer in the usual course of business, and the customer relied upon it to his prejudice. As the check was upon itself, the bank could readily have ascertained whether or not the account upon which it was drawn was good and the account was in fact good after the presentation of the check and on the same day, and the bank carelessly paid out the money on other checks subsequently presented. The court decided that it was better to hold that the bank intended to credit the one customer and to hold the other liable as for an overdraft. The court concedes in the opinion that the rule would have been different had the check been drawn upon another bank and been deposited to the credit of the customer. The check in question was neither drawn nor deposited by a customer, nor in the ordinary course of business. It was drawn against a conditional deposit of a single item, and presented for deposit as the sole item upon which a new account was to be opened:

It did not constitute an overdraft. The fund against which it was drawn was not yet available. The intention of the drawer, fully known to the payee, as shown by a statement made by Sutherland to one of the officers of the bank when he came there representing the plaintiff and to open the account with the check, was to have this account consisting of this fund transferred to the credit of the plaintiff. An officer of defendant, ignorant of the fact that the deposit was conditional, was thus induced to issue the passbook. In these circumstances, it would be most inequitable to hold defendant estopped from declining to be bound by the credit indicated by the issuance of the passbook when within 24 hours, and, as soon as the error was discovered, it gave notice to the plaintiff by communicating with the president of the securities company, who represented it in attempting to thus open the account, and, on finding a disinclination to rectify the error, returned the check and refused to transfer the account on its books or to give plaintiff credit on its books. Here the defendant pleaded, and endeavored to prove, that the plaintiff received the check with knowledge of all material facts, tending to show that the securities company had no right to transfer the fund, and that with such knowledge, in thus inducing the defendant to accept the check and transfer the credit to plaintiff, it perpetrated a fraud on the defendant, on the discovery of which it elected to and did rescind the transaction and return the check, and there is no evidence that plaintiff was either a bona fide holder of the check or that its position had changed to its prejudice between the issuance of the passbook and the notice given by defendant that the account had not been transferred.

It is fairly to be inferred from the evidence that Thomas was induced to subscribe for capital stock in the securities company, and that he agreed to do so provided capital stock of the par value of $500,000 should be subscribed for and the subscriptions paid in cash. The promoters of the company evidently desired to use the name of Thomas to obtain other subscriptions, and to that end he delivered his check for $5,000 to E. T. Rhodus, who was the vice president of the securities company, on the agreement, which was communicated to the treasurer of the defendant to whom the check was delivered by Rhodus and by or in his presence both orally and by letter of the securities company written Rhodus and delivered to the defendant by him, that it was given as a subscription for capital stock of the securities company, and was not to be paid over to the company until defendant received notice from it that subscriptions to the capital stock had been made and paid in cash to the amount of $500,000, and that, until such time, the deposit was not to be deemed to belong to the securities company or to be available to it, but was to remain the property of Thomas. The court received evidence of these facts, and, on motion of counsel for plaintiff, struck it out upon the theory that the evidence failed to show that plaintiff had notice or knowledge thereof. To this ruling counsel for defendant duly excepted. The courts excluded evidence of the conversation between Thomas and Rhodus at the time of the delivery of the check, which was offered for the purpose of showing that the delivery of the check was condi-

tional, the same as subsequently stated to the defendant when the check was deposited to the credit of the securities company, and to this ruling an exception was likewise taken.

One question presented for decision is whether there was any evidence tending to show that plaintiff had notice or knowledge of the conditions upon which the account of the securities company with the defendant was opened, for it is quite clear that the conditions upon which the account was opened were imposed for the benefit of Thomas, and that the defendant had no right, without his consent, to pay any part of the fund to the securities company until the conditions were complied with. The conditions were not complied with, and compliance therewith was not waived by Thomas. The securities company, therefore, could not have compelled the defendant to pay over the fund to it, and, if plaintiff had actual or constructive knowledge of the facts which deprived the securities company of any right to draw the check by which it attempted to transfer this fund to plaintiff, then plaintiff is not an innocent holder, and has no more right to recover than the securities company would have had. I am of opinion that the plaintiff was chargeable with notice and knowledge of these facts, and that such notice and knowledge were imputed to it by the fact that Rhodus, who was president of the securities company, and in that capacity presumptively, at least, chargeable with knowledge of the conditions upon which this money was placed to the credit of the company, acted for the securities company in drawing the check to the order of plaintiff, and at the same time was president of the plaintiff and acted for it in accepting the check and in opening the account in its name with defendant. The securities company was represented in the original transaction between it and Thomas and defendant by its vice president, E. T. Rhodus, who was brother to the president of the companies, and also vice president of plaintiff. It is a reasonable inference that the records and papers of the securities company showed that this letter which was delivered to defendant when the account was opened had been written, and that the company had knowledge of the transactions with respect to this matter which rested in parol. Although there is no evidence that the president of the securities company had actual knowledge of the conditions upon which the account was opened, there is no evidence to the contrary. He was president of the securities company at that time, but did not become president of the plaintiff until the month of February thereafter. In this capacity as president in dealing with the affairs of the company in so far as they related to this account, he was chargeable with knowledge of the facts. He had, so far as the evidence shows, no personal interest either in having the check made by the securities company, or in having it received by the plaintiff or accepted by the defendant. It must therefore be presumed that he was acting solely in the interests of the respective companies of which he was president, and therefore the knowledge which he had in his capacity as president of the securities company was imputable to

him in so far as he dealt with himself as agent of the plaintiff. Crooks v. People's Nat. Bank, 72 App. Div. 331, 76 N. Y. Supp. 92, 495.

There is another ground which I think is fatal to this judgment. The evidence presented questions of fact as to whether or not defendant intended to and did accept the check unconditionally as cash (see Scott v. Ocean Bank, 23 N. Y. 289, 291), and as to whether or not, the securities company did not act in bad faith in inducing defendant to permit it to check out this fund. See Peterson v. Union Nat. Bank, 52 Pa. 206, 91 Am. Dec. 146, and Cragie v. Hadley, 99 N. Y. 133, 1 N. E. 537, 52 Am. Rep. 9. It must be presumed to have known that it had no right, without a new agreement to which the assent of Thomas was obtained, to draw on this account. The course pursued was calculated to mislead the officers of the defendant. If the securities company had attempted to withdraw this large amount of money forming the sole item in the account, it is more likely that, before paying over the cash, it would have been discovered that the account was not subject to check; but merely transferring it on the books to another account, and that a new one apparently controlled by the same people was not apt to attract attention or arouse suspicion, and it did not. There is no evidence that plaintiff parted with value, or that its position has been changed to its prejudice by relying upon the acceptance of the check by defendant during the 24 hours before it received notice. The evidence points to a scheme on the part of the securities company to defraud Thomas and the defendant, on becoming alarmed about obtaining the necessary subscription to entitle it to this fund, and it may be that the relations of these companies are so intimate, since they had a common president and at least another officer in common, the securities company is using the plaintiff to accomplish this injustice. I am of opinion that a prima facie defense was shown, and that the plaintiff was called upon to give evidence that it was an innocent holder of the check for value.

It follows, therefore, that the judgment should be reversed and a new trial granted, with costs to the appellant to abide the event. All concur.