Rockey River Development Company, Plaintiff, *v.* German American Brewing Company, Defendant.

Fourth Department, July 6, 1920.

Corporations — bills and notes — when corporation chargeable with knowledge of fraud of its officer in negotiating checks of other corporation to liquidate his personal debt — principal and agent — principal which receives and retains proceeds of fraudulent transaction becomes liable for fraud, irrespective of knowledge thereof — estoppel.

Where the treasurer of the plaintiff, a domestic corporation, who was also the president of the defendant corporation, and by virtue of his office completely dominated the defendant's affairs and had control of its finances, drew checks in the name of the plaintiff upon its bank of deposit, payable to the defendant, the proceeds of which were deposited to the defendant's credit, and said officer credited his own indebtedness to the defendant upon the records of the corporation by the amount of such checks, which were not given in payment or liquidation of any indebtedness owing by the plaintiff to the defendant, and such checks were drawn without the authority or consent of any of the other officers of the plaintiff, it may recover the amount thereof from the defendant.

On proof of the facts aforesaid, it was proper for the court to direct a verdict for the plaintiff for the amount of said checks, for, under the circumstances, the defendant, even without the admissions of its acting treasurer, as to his knowledge, was put upon efficacious inquiry respecting the transactions, and it was chargeable with knowledge which would have been disclosed by its records, that the checks were not given in payment of any indebtedness from the plaintiff to the defendant, and were used to liquidate a debt of the defendant's president to it.

Where the same officer of the defendant, without authority, drew a check in the name of the plaintiff, of which he was treasurer, and obtained a New York draft which he delivered to a bank and thereafter gave to said bank a check of the defendant in return for said draft, which was delivered to him as paid, and two notes of the defendant for the amount of said draft and check, which were its valid obligations, were canceled, and said officer credited his own account with the defendant with the amount of said New York draft, the defendant was not chargeable with actual knowledge of the fraud upon the plaintiff, for the draft gave no indication that the plaintiff was in any wise involved in the transaction, but irrespective of lack of notice, the defendant cannot retain the benefits of said transaction which resulted in the payment of its notes, without adopting and ratifying the fraudulent means used by its officer in effecting such payment, and hence is liable to the plaintiff therefor upon the principle of estoppel.

Motion by both parties for a new trial upon a case containing exceptions, ordered to be heard at the Appellate Division in the first instance, after the direction of a verdict by the court at the close of the case of no cause of action in defendant's favor as to a portion of the demand of the plaintiff, and in the plaintiff's favor as to a portion of his demand, upon a trial before the court and a jury at the Erie Trial Term in May, 1919.

*J. A. Magoffin*, for the plaintiff.

*James O. Moore*, for the defendant.

Lambert, J.:

The plaintiff and defendant are, respectively, domestic corporations with their principal places of business in the city of Buffalo, N. Y. During the times involved in this controversy one John F. Nagel was the treasurer of the plaintiff and the president of the defendant, and the business of the plaintiff was transacted at the business office of the defendant.

Since 1915, Nagel, as president of the defendant, completely dominated its affairs and had unquestioned control of the finances  Following the custom of his immediate predecessor in office, he made personal use of the funds of the defendant from time to time. In each instance he charged the same to himself upon the records of the defendant corporation.

On May 9, 1917, Nagel, without any right or authority, drew a check in the name of the plaintiff, upon its account, in the Bank of Buffalo, to the order of New York draft. A draft was issued to him on the Chemical National Bank of New York city and was by him taken to the Citizens Commercial Trust Company of Buffalo, N. Y., and delivered to the bank. Immediately thereafter he delivered to the Citizens Commercial Bank a check of the defendant for $25,000, and in return for the said draft and check the bank delivered to him as paid and canceled two certain notes of the defendant in the sum of $25,000 each, and which notes were at that time valid and outstanding obligations of the defendant. The canceled and paid notes were by Nagel returned to the office of the defendant and

placed in its files, and he took credit upon his account with the defendant for the amount of the New York draft.

On July 27, 1917, Nagel likewise drew a check in the name of the plaintiff, upon its funds on deposit in the Bank of Buffalo, for $10,000, which was payable, by its terms, to the defendant and he delivered that check to one Reeb, a bookkeeper and acting treasurer of the defendant, who deposited it to the defendant's credit in the Bank of Buffalo.

On August 3, 1917, Nagel drew a like check in the plaintiff's name, upon its funds in the Bank of Buffalo, for the sum of $15,000, likewise payable to the defendant, and this was by Nagel also delivered to Reeb and by him deposited to the defendant's credit.

On August 31, 1917, Nagel again drew plaintiff's check for $10,000 on the Bank of Buffalo, to the order of the defendant, delivered the same to Reeb, who deposited the same to the defendant's credit in the Bank of Buffalo.

Nagel credited his indebtedness to the defendant upon the records by the amount of these several checks. Reeb testifies that he knew from the beginning that these checks so drawn were not given in payment or liquidation of any indebtedness owing by plaintiff to the defendant, and that he knew that Nagel's purpose was to reduce his overdrafts upon the records of the defendant company.

These checks were all drawn without any authority from or knowledge by any other officer of the plaintiff and were, so far as the plaintiff was concerned, drawn and cashed by the bank without its authority or consent.

This action is brought by the plaintiff against the defendant to recover the amount represented by these transactions upon the theory that the circumstances involved were such as to charge the defendant with knowledge that Nagel was misappropriating its funds.

Upon the trial both parties moved for the direction of a verdict. The trial court thereupon directed a verdict for the plaintiff for the sum of $38,790, representing an aggregate of the three several checks, with interest, and directed a verdict of no cause of action respecting the $25,000 transaction of May 9, 1917.

The respective parties excepted to the appropriate pro-

visions of such decision, and each made a motion for a new trial, and the exceptions so taken, together with the motions for a new trial, were ordered heard in this court in the first instance.

As to the direction of the verdict upon the July twenty-seventh, August third and August thirty-first items, involving respectively the sums of $10,000, $15,000 and $10,000, there is not, as it seems to me, serious question but that the direction of the court was legally justified. Even without the admissions of Reeb, as to his knowledge, the transactions upon their face indicated the unlawful diversion of funds, sufficiently at least to put the defendant to efficacious inquiry respecting the truth of the transaction and the resulting misappropriation within the authority of *Henry* v. *Allen* (151 N. Y. 1); *Benedict* v. *Arnoux* (154 id. 715) and *Carlisle* v. *Norris* (215 id. 400).

In reaching this conclusion as to these items it is not necessary to distinguish upon any theory of implied knowledge. It is true that ordinarily knowledge upon the part of an agent of a corporation imputes knowledge to the corporation, because of the duty of the agent to disclose information he possesses pertinent to his agency. It is equally true that this rule has its exceptions in those instances where the agent is engaged in transactions for his own benefit and hostile to the benefit of his principal or the benefit of some other person in a manner detrimental to his principal and then the presumption of disclosure does not follow. (*Crooks* v. *People's Nat. Bank,* 72 App. Div. 331; *Carlisle* v. *Norris, supra.*)

As to these three items we do not have to refine as to the probability of Nagel's having made any disclosure. The instruments themselves are sufficient to indicate the situation, and, coupled with that circumstance, are the admissions of Reeb, the acting treasurer of the defendant, of actual knowledge. A consultation with the records of the defendant would have disclosed that these checks were not given in payment of any indebtedness from the plaintiff to the defendant and that they were used to apparently liquidate a debt of Nagel to the defendant.

In my judgment, the exception taken to the direction of a verdict as to these three several items should be overruled.

The direction as to the $25,000 transaction of May ninth involves a premise of fact unlike the situation respecting the three several items mentioned.   In this instance the negotiable instrument adopted by Nagel as a means of appropriating the plaintiff's money for the benefit of the defendant was used by him to procure a New York draft.   The draft gave no indication that the plaintiff was in any wise involved in the transaction.   The moneys when paid were not paid into the office of the defendant, but were paid to the Citizens Commercial Trust Company in liquidation of an obligation of the defendant. Obviously, there was nothing in this transaction in and of itself indicating actual knowledge upon the part of the defendant or any of its officers, except its president, Nagel.   In this situation the trial court concluded it was not an instance falling within the rule of constructive knowledge, for the reason that Nagel was at that time engaged in a scheme for his personal benefit; that it could not be said that any presumption could arise that he made disclosure of his fraudulent actions to the defendant.   The trial court was of the opinion that there was no basis for the presumption that the defendant had actual or constructive notice, or notice putting it upon inquiry, respecting this transaction and hence the plaintiff was not entitled to a judgment therefor.

Upon the theory then urged as a basis of recovery, I think the court was right.   There is, however, another line of cases well established, which, in my judgment is applicable to the facts involved in the theft of the $25,000 by Nagel, the benefit of which the defendant had.   The doctrine of these cases precludes a principal from denying knowledge possessed by its agent where the transaction involved has worked out to his material benefit.   It is said that such a principal, even though ignorant and innocent, cannot receive the benefits of such a fraudulent transaction without adopting as an incident thereto the means used by the agent to produce the result. In this instance the defendant did benefit from this transaction. Its valid obligation of $25,000 was paid through a transaction which amounted to nothing less than a larceny.   It cannot now, in my judgment, disclaim the fraud and theft by which Nagel procured this benefit for it and retain it.   In concluding to retain it it ratifies and adopts all of the methods he used to

secure that benefit irrespective of whether or not it had any knowledge or information upon the subject.

The leading case announcing this doctrine is *Taylor* v. *Commercial Bank* (174 N. Y. 181). The doctrine of this case is reaffirmed as sound in morals in the late case of *Bloomquist* v. *Farson* (222 N. Y. 375). The principle decided in these cases, as it seems to me, is clearly· applicable to the facts involved in the $25,000 item. It appears that Nagel, the chief executive officer of the defendant, by virtue of his position and relations with the plaintiff, misappropriated $25,000, and applied it for the benefit of the defendant in the payment of its note. It would be most unjust and inequitable to tolerate the retention of that benefit by the defendant, without requiring it to assume full responsibility for Nagel's act in securing it. Whether the defendant did or did not know at the time of the transaction the circumstances under which the money was obtained seems to me of little consequence. Eventually, it did know and knowing chose to assume the right to retain the results of the transaction. The plainest doctrine of estoppel seems applicable.

It follows that the defendant's exceptions should be overruled, its motion for a new trial denied, and judgment directed for the plaintiff in the sum of $38,790, with interest; that the plaintiff's exceptions should be sustained and its motion for a new trial respecting the $25,000 item granted.

All concur.

Defendant's exceptions overruled and its motion for a new trial denied, with costs, and judgment directed to be entered for the plaintiff upon the verdict for $38,790. Plaintiff's exceptions sustained and its motion for a new trial as to the cause of action for the $25,000 item granted.