THOMAS S. YOUNG & another *vs.* ALBERT C. TITCOMB.

SAME *vs.* NEW ENGLAND FOUNDATION COMPANY, INCORPORATED.

Suffolk. December 11, 1928. — June 25, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Contract,* What constitutes, Validity, For the issuance of corporate stock. *Corporation,* Capital stock, Officers and agents. *Agency,* Scope of authority.

A corporation was largely controlled by one who was the largest stockholder and was president and treasurer. After two employees of the corporation had stated that they were unwilling to continue in its employ unless they were enabled to acquire interests as stockholders, discussions were held between them and the principal stockholder, at which it was suggested that preferred stock be issued to him on the basis of certain schedules of assets, that certain shares of common stock be issued to him and to the employees, and that the employees have an option to purchase of the corporation certain other shares at prices to be determined. Attempts to put the agreement into writing failed because the parties were unable to agree upon all its terms. It never was agreed whether the stockholder or the corporation should be the contracting party; the schedules never were prepared; no stock was issued; and no agreement could be reached as to the responsibility for unpaid taxes of the corporation, for liability arising out of work done by it and suits against it, nor as to the basis for the issuance of the common stock. No votes were passed to enable the employees to exercise the option, nor was the price to be paid by them thereunder fixed. It did not appear that the stockholder was authorized to act for the corporation in such negotiations, nor that any acts of his were ratified by it. In actions of contract by the employees against the stockholder and the corporation, it was *held,* that

(1) The plaintiffs did not fix with either defendant terms sufficiently definite to constitute an enforceable contract;

· (2) The acts of the stockholder were not binding upon the corporation merely by virtue of his ownership of its stock or of his authority as president and treasurer;

(3) A verdict properly was ordered for the defendant in each action.

An agreement, requiring that stock in a Massachusetts corporation be issued to one of its employees for nothing, or at most in return for services already rendered to it by him upon a definite basis for compensation which has been paid to him, is invalid under G. L. c. 156, §§ 15, 16.

TWO ACTIONS OF CONTRACT. Writs dated October 6, 1924.

In the Superior Court the actions were referred to an auditor and subsequently were tried together on his report and other evidence before *Flynn*, J. Material evidence is stated in the opinion. At the close of the evidence, the judge ordered a verdict ·for the defendant in each action. The plaintiffs alleged exceptions which, after the death of *Flynn*, J.,.were allowed by *Cox*, J.

*R. C. Evarts*, for the plaintiffs.

*F. D. Putnam*, for the defendants, submitted a brief.

RUGG, C.J.  The declaration in the first action alleges that the plaintiffs, desiring to obtain interest as stockholders in the New England Foundation Company, Incorporated, by which they. were employed, and of which the defendant Titcomb was president, treasurer and a very large, if not the sole, stockholder, told Titcomb that they would leave its employ if their desire was not granted; that Titcomb on or about July 6, 1923, contracted with them in consideration of their past services and their agreement to continue to devote all their time and energy to the business of the corporation, to cause the issue to the plaintiffs and Titcomb, forthwith, of part of the common stock in a manner and in proportions set out in detail; to cause the issue of specified preferred shares; to cause the plaintiffs to be made directors and continued in its employ·at specified salaries; to secure to them an option to purchase one hundred shares of the unissued common stock of the corporation, on or before January 1, 1926; and to secure an increase of the capital stock of the corporation by fifteen hundred shares, with an option to them to purchase five hundred of these shares at

par. It alleges that the plaintiffs continued in the employ and rendered the services required and are ready and willing to do all agreed by them, but that Titcomb has failed to cause the shares to be issued or the options to be given to the plaintiffs.

The declaration in the second action is in substance the same except that the contract is alleged to have been made by the corporation. The answers were general denials, the statute of frauds, G. L. c. 106, § 6, which relates to sales of goods or choses in action, and G. L. c. 259, § 6, which relates to sales of stock not owned by the seller.

The cases were tried to a jury upon an auditor's report and oral testimony. They are before us upon exceptions to the orders for directed verdicts for the defendants. Exceptions to rulings upon evidence have not been argued and are treated as waived.

Confessedly, the parties never executed any written instrument setting out the terms of the alleged contract. There were only oral discussions and conversations. If any contract exists, its terms must be ascertained from talk between the plaintiffs, Young and Forsythe, and the defendant Titcomb. It is stated in the report of the auditor that the plaintiffs do not contend that a contract of any sort relating to the matters now in issue ever was made except at a conference between these three held in July, 1923. We do not understand the plaintiffs to take any other position in the argument at the bar. Therefore it is of pivotal importance to ascertain what was said at that conference rightly susceptible of being construed as touching a contract. The evidence in this particular must be considered in its aspect most favorable to the plaintiffs. There are four different sources of evidence on this vital point; the auditor's report, and the testimony of the three participants in that conference. The testimony of Titcomb may be disregarded, for it affords no support to the contentions of the plaintiffs and was in important particulars diametrically opposed to them. The auditor makes no definite finding that there was a contract. He makes important findings as to the relations of the parties and the substance of the conversation. Thus

it appears that the plaintiffs held significant positions of responsibility in the employ of the defendant corporation and received from it substantial salaries. They apparently were valuable men to it and they felt that they ought to be given an opportunity to acquire important interests in it as stockholders. Titcomb was the main, if not the sole, stockholder, and was its executive and financial officer. These three were the parties to the conference of July, 1923. The plaintiffs stated that they were disinclined to remain in the employ of a corporation so largely controlled by one man. Discussion in which all three participated led to the suggestion by Titcomb that elements put forward in the discussion might be combined in a plan of reorganization mutually satisfactory: (1) that an inventory showing the fair value of the plant and equipment constituting the fixed assets of the corporation be prepared by Titcomb and Forsythe, and preferred stock be issued to Titcomb for the fair value thereof. (2) That a schedule showing the fair value of the quick assets of the corporation be prepared by Titcomb as basis for the issuance to Titcomb of preferred stock for the excess over $40,000 and not exceeding $50,000. (3) That there be issued by the corporation one hundred shares of common stock to Young, eighty shares to Forsythe, and twenty shares to Titcomb. (4) That Young and Forsythe have an option to purchase of the corporation, at prices to be fixed or determined, five hundred shares of preferred stock and one hundred shares of common stock in the corporation. (5) A further point was that this option must be exercised by Young and Forsythe on or before January 1, 1926. The proposed reorganization was to take effect as of July 1, 1923, and contracts to be allocated as of that date presented no difficulty. The auditor adds that point (3) involved a difficulty as to the basis on which these shares could legally be issued, which the three were unable to settle as it "presented a question of compliance with legal forms in order to accomplish a purpose as to which the three parties were in entire accord." The testimony of Young and Forsythe as to the talk at this conference need not be narrated in detail. It adds nothing to the substance of the findings of the auditor

already stated in respect to liability of either of the defendants and in essentials supports such findings. It is apparent, however, from an examination of the testimony of Forsythe, that the understanding or agreement was with the corporation, Titcomb acting as its representative. It is equally apparent, from the testimony of Young, that the inference might be drawn that Titcomb was a contracting party. There were numerous subsequent conferences between these three parties, some with and some without the presence of attorneys. There were attempts to put in writing the terms of the contract, all of which failed because it was impossible for the three to agree upon what those terms were. The inventories and schedules never were made. No stock ever was issued. Finally, the plaintiffs brought these actions and left the employ of the defendant in October, 1924. Young wanted the one hundred and the eighty shares of common stock to be issued to him and to Forsythe before the inventories were completed and the other stipulations formulated. One result of the subsequent conferences and negotiations which cannot successfully be challenged on this record is that no agreement could be reached (1) as to assumption by Titcomb of all responsibility (a) for liability of the corporation for unpaid taxes, (b) for liabilities of the corporation arising out of work done by it, and (c) for suits against the corporation; (2) as to the parties to the contract, whether Titcomb or the corporation; (3) as to basis for issue of the two hundred shares of common stock. These were not incidental or subsidiary matters. They were subjects of controversy of substantial importance.

This summary of the evidence favorable to the plaintiffs, and of that undisputed or indisputable, demonstrates that the July conference, or that conference in combination with all subsequent occurrences, never reached a stage where an enforceable contract was established. The terms eventuating from that discussion were too vague and indefinite to constitute a contract. The share of Titcomb in common or preferred stock to be issued, or in surplus, was left to be ascertained by inventories. Those inventories were never made. A schedule of quick assets formed an important part

of the plan. This schedule was never prepared. The basis on which the two hundred shares of stock were to be issued was not determined. No price was ever fixed for the option of the one hundred shares of common stock to be taken by the plaintiffs because that price according to the testimony of each of the plaintiffs was to be par plus a proportionate share of the surplus at the time of issue. Such a price was necessarily indeterminate, because the surplus was unascertainable in July, 1923, and was never made certain. Votes were never passed so as to enable the exercise of the option by Young and Forsythe, and no price for the exercise of the option was fixed by agreement of parties or otherwise. That the agreement was too indefinite to permit ascertainment of its essential parts is apparent from the fact that attorneys of high standing representing the plaintiffs, on the one side, and the defendants, on the other, were never able to draft a contract embodying terms of the agreement approved by all parties. Under well settled principles of law discussions resulting in a sketch, so undetermined in essential factors as the one here disclosed, do not constitute a contract. *Marble* v. *Standard Oil Co.* 169 Mass. 553. *Jamestown Portland Cement Corp.* v. *Bowles,* 228 Mass. 176, 180, 181. *Hampden Railroad* v. *Boston & Maine Railroad,* 233 Mass. 411, 417, and cases collected. *Conos* v. *Sullivan,* 250 Mass. 376, 378. *Kaufman* v. *Lennox,* 265 Mass. 487. *Davila* v. *United Fruit Co.* 88 N. J. Eq. 602. See *Varney* v. *Ditmars,* 217 N. Y. 223. It is not fatal to the existence of a binding agreement that every detail is not fully covered by stipulation, or that it was not reduced to writing although a document was contemplated. *Silver* v. *Graves,* 210 Mass. 26. *Brennan* v. *Employers Liability Assurance Corp. Ltd.* 213 Mass. 365. *Doten* v. *Chase,* 237 Mass. 218. *Bines* v. *Rosen,* 263 Mass. 562. But that principle and cases like these are not governing on the facts here disclosed.

A feature common to all the versions of the talk at the July conference is that two hundred shares of common stock were to be "given" or issued for nothing to Young, Forsythe and Titcomb. There can be no validity in a contract to that end. Stock in a Massachusetts corporation cannot be issued

for anything else except "cash," "property, tangible or intangible," "services or expenses." G. L. c. 156, §§ 15, 16. There is a faint suggestion in the record that this stock might be issued for "services." The only hint of any "services" is that they had already been rendered. But they had been rendered upon a defined basis as to compensation so far as concerned the plaintiffs. That compensation was paid. Issue of that stock could amount to nothing more than a gift in these circumstances. Even though Titcomb be regarded as the sole stockholder, he could not disregard the laws of the Commonwealth as to the issuance of stock and the payment therefor to the .corporation. *Selden Truck Corp.* v. *Selden Truck Service Co.* 257 Mass. 58. *Treasurer & Receiver General* v. *Macdale Warehouse Co.* 262 Mass. 588, 593. See *Old Dominion Copper Mining & Smelting Co.* v. *Bigelow,* 203 Mass. 159, 194.

In view of what has already been said, it is unnecessary to consider whether the record discloses any consideration for the alleged promises on the part of Titcomb or whether any of the other defences put forward may be a bar. In the case against the corporation there is a further consideration. There is no evidence that Titcomb was authorized to bind it or that his action has been ratified by it. There is evidence that meetings of the directors were held and records kept, but nothing to show authorization or ratification of the substance of the conclusions reached at the July conference or of any such contract as is alleged by vote either of the directors or of the shareholders. Titcomb could not bind the corporation by virtue of his sole ownership of its stock, if it be assumed that he was such owner, *Selden Truck Corp.* v. *Selden Truck Service Co., supra; England* v. *Dearborn,* 141 Mass. 590; nor, so far as appears, by his authority as president and treasurer. *Sears* v. *Corr Manuf. Co.* 242 Mass. 395. He had a personal interest which might be adverse to that of the corporation; and, although Young and Forsythe acted as directors after July 6, 1923, and after that date were paid salaries increased in accord with the understanding then reached, the judge was right in ruling that no evidence of original authority or of subsequent ratification

on the part of the corporation existed which would justify a finding for the plaintiffs against the corporation.

*Exceptions overruled.*