Wilfred A. Waltemade, J.
The defendants, pursuant to the provisions of CPLR 4401, have made a motion at the end of plaintiff’s case to dismiss the complaint upon the ground that the plaintiff has failed to make out a prime facie case. In the determination of this motion, the court has applied the principle of law that on motions to dismiss a complaint at the end of a plaintiff’s case, the facts adduced by the plaintiff are to be considered in the aspect most favorable to the plaintiff and that the plaintiff is entitled to the benefit of every favorable inference which can be drawn from the evidence (Chmela v. Board of Educ. of City of N. Y., 26 Misc 2d 10, affd. 17 A D 2d 826).
This court’s research has failed to find a case decided by either the State courts in New York or Delaware, in which the precise issue of the case at bar has been passed upon. Nor has counsel for either the plaintiff or defendants directed this court’s attention to any such case.
In the case on trial, the plaintiff sets forth two causes of action, both of which seek recovery of damages for an alleged breach of a written contract of employment. The first cause of action is against the defendant Bartell Broadcasting Corporation, an entity incorporated under the laws of the State of Delaware. It is alleged in substance that on or about March 16, 1961, the plaintiff and the defendant Bartell Broadcasting Corporation entered into a written contract wherein the plaintiff was engaged as an assistant to Gerald A. Bartell, the president of the defendant Bartell Broadcasting Corporation. The plaintiff’s primary duties were to engage in corporate development in the field of pay television. The contract, which was for a *107 period of three years, provided for (1) the payment to the plaintiff of $1,933 per month, and (2) for the delivery to plaintiff of 12,000 shares of “ Free Registered ” stock of defendant Bartell Broadcasting Corporation, which stock was payable in three installments of 4,000 shares each in the month of January, 1962,1963 and 1964, and (3) the payment of plaintiff’s traveling and living expenses in connection with his services to the employer, and (4) that defendant Bartell Broadcasting Corporation would provide the plaintiff with a private office and proper office facilities, and (5) that the agreement would be binding on any successor corporation or any corporation with which defendant Bartell Broadcasting Corporation would merge.
This written contract was signed by the plaintiff and by Gerald A. Bartell, in his capacity as the president of Bartell Broadcasting Corporation. It is further claimed that on or about May, 1961, this contract was amended to increase plaintiff’s monthly compensation from $1,933 to $2,400. It is further contended that the plaintiff was not paid his monthly compensation commencing with the month of November, 1961; that the defendant Bartell Broadcasting Corporation failed to deliver the 4,000 shares of stock allegedly due in January, 1962; and that in July, 1962, the defendant Bartell Broadcasting Corporation denied the validity of plaintiff’s employment contract.
The second cause of action, which is against the defendant Macfadden-Bartell Corporation, is identical with the first cause of action, except that in the second cause of action, it is further alleged that the defendant Macfadden-Bartell Corporation was formed by and resulted from the merger in February, 1962 of Macfadden Publications Inc. with Bartell Broadcasting Corporation, and that as part of the merger, the defendant Macfadden-Bartell Corporation assumed the obligations of the plaintiff’s employment contract with the defendant Bartell Broadcasting Corporation.
Granting to the plaintiff a most favorable view of the testimony and giving to him the benefit of every favorable inference to be drawn from such evidence, the court has assumed the making and execution of the contract in litigation, although it should be observed that the defendants have vigorously contended that the contract was fraudulently secured by the plaintiff.
The court will now consider the causes of action set forth in the complaint in an inverse order.
The evidence establishes that the merger was completed in February, 1962. However, absent from the plaintiff’s case, is any testimony from which even an inference may reasonably *108 be drawn that the new corporate entity, this defendant Macfadden-Bartell Corporation, ever assumed the performance of the contract of March 16, 1961. There is no testimony in the plaintiff’s case that this defendant by resolution, ratification, or by acts of its officers or board of directors ever assumed the obligations of the contract. On the contrary the evidence in this case indicates that as early as November, 1961, some three months prior to the formation of defendant Macfadden-Bartell Corporation, the existence of the contract was in dispute. The plaintiff received no monthly payments under the contract beginning with the month of November, 1961 and the plaintiff did not receive the 4,000 shares of stock due in January, 1962. The record is replete with testimony by the plaintiff relative to many conferences had by him with Gerald A. Bartell during the months of November, 1961 and January, 1962 regarding plaintiff’s employment contract and status. The status of the employment contract had not been resolved at the time of the merger. In view of this testimony by the plaintiff, how can it be said that in February, 1962 or sometime thereafter, the defendant Macfadden-Bartell Corporation assumed the performance of the contract?
The plaintiff can find no legal solace in the provision that the contract would be binding upon any successor corporation of the defendant Bartell Broadcasting Corporation or any corporation with which it may merge. Parties to a contract, by the terms of their own agreement, cannot validly cast the obligation of the terms of such contract upon a third party who is not a signatory to the contract. This elementary proposition of law requires no citation of authorities.
The court will now turn its consideration to the first cause of action set forth in the complaint.
A corporation can only act through its directors, officers and employees. They are the conduit by and through which the corporation is given being and from which its power to act and reason springs. Therefore in every action in which a person sues a corporation on a contract executed on behalf of the corporation by one of its officers, one of the issues to be determined is whether the officer had the express, implied or apparent authority to execute the contract in question.
It is axiomatic that the burden rests upon the person suing a corporation on a contract, to establish the authority of the corporate officer to execute the contract (Booth v. Litchfield, 201 N. Y. 466; Sponge Rubber Prods. Co. v. Purofied Down Prods. Corp., 281 App. Div. 380, affd. 306 N. Y. 776).
*109 The authority of an officer to act on behalf of a corporation may be express, implied or apparent. There has been no proof offered in this case indicating that Gerald A. Bartell, as president of the defendant Bartell Broadcasting Corporation, had express authority to enter into the agreement, dated March 16,1961, which is the subject of the first cause of action.
Did Gerald A. Bartell then have either implied or apparent authority to execute the contract?
Implied authority is a species of actual authority, which gives an officer the power to do the necessary acts within the scope of his usual duties. Generally, the president of a corporation has the implied authority to hire and fire corporate employees and to fix their compensation. However the president of a corporation does not have the implied power to execute “ unusual or extraordinary ” contracts of employment (Carney v. New York Life Ins. Co., 162 N. Y. 453; Hardin v. Morgan Lithograph Co., 247 N. Y. 332). In the case of Heaman v. Rowell Co. (261 N. Y. 229), the court held that the president of a corporation did not have the implied authority to enter into a contract of employment for life.
In the case of Greenspon’s Sons Iron & Steel Co. v. Pecos Val. Gas Co. (34 Del. 567), the court held that the president of a corporation has the implied power to perform all acts of an ordinary nature which are incident to his office.
The agreement of March 16, 1961 not only provides for the payment of a substantial monthly compensation, but also requires the delivery of 12,000 shares of “ Free Registered ” stock of the defendant Bartell Broadcasting Corporation. While the payment of the monthly compensation would not make the contract of March 16, 1961, “ Unusual or extraordinary ”, the court is of the opinion that the inclusion in the contract of the provision requiring the delivery to plaintiff of 12,000 shares of “ Free Registered ” stock, does bring the agreement within the category of being an ‘ ‘ wmsual and extraordinary ’ ’ contract.
A consideration of the cases of Gumpert v. Bon Ami Co. (251 F. 2d 735); Noyes v. Irving Trust Co. (250 App. Div. 274, affd. 275 N. Y. 520); Warszawa v. White Eagle Brewing Co. (299 Ill. App. 509) and Young v. Titcomb (268 Mass. 14), convinces this court to conclude that the contract of March 16, 1961 was “ unusual and extraordinary ” and therefore beyond the scope of the implied authority of the president of the defendant Bartell Broadcasting Corporation.
In the Gumpert v. Bon Ami Co. case (supra), the plaintiff there sued on a one-year employment contract under which he *110 was to be paid $25,000 in cash and $25,000 in defendant’s corporate stock. The contract was signed on behalf of the corporation by one Arthur Rosenberg, a director and member of the corporation’s executive committee. At page 739, the Federal court there wrote; “Even if Rosenberg was chief executive officer * * * it is doubtful that he would possess power to make such an arrangement as a normal incident of his position. Cf. Noyes v. Irving Trust Co., 250 App. Div. 274, 294 N. Y. S. 2, affirmed 275 N. Y. 520, 11 N. E. 2d 323 ” (emphasis supplied).
In the case of Noyes v. Irving Trust Co. (supra), the plaintiff there sued on an employment contract under which he was to be paid $400 per month together with a bonus based upon the net profits. The contract was signed on behalf of the defendant corporation by its sales manager. At pages 276 and 277, the court there wrote: “ It is well settled that a contract of this character is not the usual and ordinary contract which one authorized to employ agents and servants may make. It would require express authority. (Chard v. Ryan-Parker Construction Co., 182 App. Div. 455; 1 Mechem on Agency [2d ed.], § 988, pp. 711, 712.) The rule is founded upon sound business considerations, and one entering into such a contract is bound to inquire as to the agent’s authority. * * * Under the principle of these authorities, Taylor, the bankrupt’s manager of sales did not have the authority to bind the bankrupt to pay the bonus here in question; nor would the bankrupt’s president himself have authority so to do ” (emphasis supplied).
In the Warszawa v. White Eagle Brewing Co. (supra), the Ulinois court held that the president of the defendant corporation was not authorized to enter into an employment contract which provided for payment in cash and stock of the corporation. In Young v. Titcomb (supra), the Massachusetts court held that the president of the defendant corporation had no authority to execute a contract wherein the plaintiffs were promised stock in the defendant corporation if they remained in the employ of the corporation.
The reason for the rule enunciated in the cases just cited, is easily discernible. Corporate stock is the sinew, muscle and bone upon which the financial structure of a corporation is constructed. Corporate stock is sold, traded or disposed of in exchange for money, labor, services or other property. Thus in this manner a corporation acquires the necessary assets needed for the fulfillment of the corporate purposes.
The laws of the State of Delaware, under which the defendant Bar tell Broadcasting Corporation was organized, and the laws of the State of New York, contain similar provisions relative *111 to the issuance of corporate stock. Section 152 of the General Corporation Law of the State of Delaware provides that: “ Subscriptions to, or the purchase price of, the capital stock of any corporation organized under this Code or any other laws of this State may be paid for, wholly or partly, by cash, by labor done * * *. In the absence of actual fraud in the transaction, the judgment of the directors, as to the value of such labor, property * i:= * shall be conclusive.” (Emphasis supplied.)
Section 69 of the New York State Stock Corporation Law (now Business Corporation Law, § 504, subd. [a]) contains similar provision to that of section 152 of the Delaware General Corporation Law.
The language of the afore-mentioned sections that “ the judgment of the directors as to the value of such labor * * * shall be conclusive ” fortifies this court’s conclusion that the president of a corporation does not have the implied authority to enter into contracts providing for the issuance of stock of the corporation without the express authorization or ratification of the corporate directors. The evaluation of the labor or property for which the corporate stock is to be issued must be determined by the board of directors, not by the president.
In Gilbert v. Burnside (16 Misc 2d 1089, mod. on other grounds 6 A D 2d 834), the court held that the power to authorize the issuance of stock is vested in the board of directors. The case of Field v. Carlisle Corp. (31 Del. Ch, 227), although not involving an employment contract, contains language appropriate here. At page 232, the Delaware court there wrote: 1 ‘ The quoted statutes impose the duty on the directors to fix the value of property received for the corporation’s stock. Section 14 [now § 152] explicitly states that the corporation’s stock may be issued ‘ for such consideration as may be fixed * * * by the Board of Directors ’. # * * Furthermore, Section 14 says that in the absence of actual fraud the judgment of the directors as to the value of the property received for the stock shall be conclusive. * * * Leaving aside other contentions,
I do not believe the power to delegate this vitally important duty can be fairly implied from the language of the statute. This is particularly true where the statute imposes the duty on the directors to deal with the particular subject matter. The importance to the corporation of the subject matter — ownership of the corporation — tends also to negative cmy implication that the directors might delegate it in a manner not explicitly authorized by statute.” (Emphasis supplied.)
*112 To permit the president of a corporation, without the express authority and approval of the corporation’s board of directors, to barter or contract away the corporation’s unissued (free) stock, would be not only an express violation of the statutes, but would also make possible the denudation of a corporation’s assets, and the dilution of the value of the stock already issued to the detriment and disadvantage of the corporate stockholders. It should be noted here that in the case at bar, the stock of both defendant corporations is publicly owned and traded.
Apparent authority is the authority which the principal permits the agent to represent that he possesses. Generally, persons dealing with officers of a corporation are bound to take notice that the powers of an officer are derived from statutes, by-laws and usages which more or less define the extent of the officer’s authority. In a doubtful case one must at his peril acquaint himself with the exact extent of the officer’s authority (Traitel Marble Co. v. Brown Bros., 159 App. Div. 485). The right of a third party to rely on the apparent authority of a corporate officer is subject to the condition that such third person has no notice or knowledge of a limitation on such authority (Ernst v. Cary Safe Co., 113 Misc. 620, revd. on other grounds 206 App. Div. 729). Although it is true that secret instructions or limitations upon the apparent general authority of an officer of a corporation will not affect one who deals with the officer in the general line of his authority, and knows nothing of such limitations; however, this rule is not applicable to any limitations which are provided for in statutes. Those who contract with a corporation do so with knowledge of the statutory conditions pertaining to a corporation (Matter of Auto Mut. Ind. Co., 14 N. Y. S. 2d 601).
The plaintiff is not a naive person, uninitiated in the business world, nor is he without knowledge of corporate financing or business practices. By his own testimony he is and was a stockholder, officer and director of several corporations. There is testimony that the plaintiff has engaged in the sale of securities to the general public. During the period from September, 1960 to February, 1961, when the plaintiff was employed by the defendant Bar tell Broadcasting Corporation under an oral agreement, the plaintiff assisted and advised Gerald A. Bar tell in the negotiations for the acquisition of (1) 26.4% of the common stock of Macfaddcn Publications Inc.; and participated in discussions for (2) a stock interest m Telegloble Pay T.V.; and (3) with Process Lithographers Inc. relating to its acquisition of stock of Bar tell and of a portion of its stock by Macfadden; and assisted in conferences re (4) the acquisition of Hillman *113 Periodicals Inc.; and (5) Haynes Lithographers; and (6) Cott Beverages, Inc.
With the varied and broad business experience acquired by the plaintiff in his wide business associations as evidenced by his career resume furnished to the defendants and by plaintiff’s own testimony, it can be truly said that he not only was presumed to have knowledge of the statutory provisions of the law pertaining to corporations, but that he apparently also had actual knowledge of such laws. It is reasonable to infer that the plaintiff was aware, or at the least, had reason to be aware, that the authority for the issuance of corporate stock rests solely within the powers of the board of directors of the corporation, and that in the absence of express authority, the president of a corporation does not have the implied or apparent authority to enter into an employment contract which provides for the issuance of corporate stock as compensation.
As stated by the court in the case of Traitel Marble Co. v. Brown Bros. (159 App. Div. 485, 487): ‘£ Whatever the law on this subject may ultimately be declared to be, nevertheless, the general proposition holds true that persons dealing with the officers and agents of a corporation are bound to take notice that their powers are derived from statutes, by-laws or usages which more or less define the extent of their authority, and in doubtful cases one must at his peril acquaint himself with the exact extent of that authority.”
The testimony in this case indicates that this is a doubtful case within the meaning of the above-quoted language, and that under the circumstances in the case at bar, the plaintiff should have at his peril acquainted himself with the exact extent of the authority of Gerald A. Bartell.
Some comment is necessary relative to the legal effect of the affixing of the seal of the defendant Bartell Broadcasting Corporation to the contract of March 16, 1961.
The plaintiff’s testimony establishes that the seal was not affixed on the date of the execution of the contract, but on some date thereafter. The plaintiff testified that some time after the execution of the contract, he had a conversation with Gerald A. Bartell in which he, the plaintiff, suggested that the corporate seal should be affixed to the contract; that Mr. Bartell agreed with the plaintiff’s suggestion, whereupon the plaintiff procured the seal from one of the file cabinets in the corporation’s offices, and he then affixed the seal. The plaintiff contends that the placement of the seal on the contract creates the rebuttable presumption that the defendant Bartell Broadcasting Corporation authorized its president to execute the contract *114 dated March 16,1961. There is no merit to plaintiff’s contention in law or fact.
The question of the legal effect of a corporate seal upon a contract is discussed in Hornstein, Corporation Law and Practice (vol. 1, § 264), where he said: “ To-day, the one significant consequence of a seal — df coupled with an acknowledgment by an officer that it was attached by proper authority — is that it gives rise to a presumption (not conclusive) that the instrument to which it is attached was duly authorized by the board of directors.”
Absent from the case on trial is any evidence of an acknowledgment by any officer that the seal was attached by proper authority. To the contrary, the plaintiff’s own testimony is that he placed the seal on the contract, albeit, allegedly with the consent of G-erald A. Bartell.
The court concludes, after a careful analysis of the evidence and the application of the law reviewed herein, that the plaintiff has not made out a prima facie case of express, implied or apparent authority of the president of the defendant Bartell Broadcasting Corporation to execute the contract of employment. On the basis of the findings herein stated, the cause of action against Macfadden-Bartell Corporation must also fall.
Accordingly, the motion by the defendants to dismiss the complaint against both defendants is granted.