Bernard F. McCaffrey, J.
In this action, tried before the court without a jury, the plaintiff, a former employee of the defendant corporation, brought suit to recover $20,500 alleged to be due him for accumulated vacation time.
Plaintiff was the first executive director of the defendant eleemosynary corporation. He was originally employed at such position for a three-year term pursuant to a memorandum-agreement signed by him and the then president of the defendant United Fund of Long Island, Inc., Leonard W. Hall, on January .18, 1965. The annual salary provided for in that agreement was $25,000. The agreement also provided that: ‘ ‘ Annual vacation arrangements agreeable to you will be made.”
Prior to the end of the three-year term a new memorandum-agreement of June 8, 1967 was signed by the plaintiff and the then president of the defendant corporation, Carl A. Frische. The new agreement provided that the term of employment would run for a three-year period from January 18, 1968 to January 18, 1971. The agreement incorporated by reference the provisions of the original agreement, including the provision that “ Annual vacation arrangements agreeable to you will be made.” The agreement also added two provisions which are not presently in issue. The court notes that both the employment agreement of January 18, 1965 and the one of June 8, 1967 are set forth in memorandum form from the president to the plaintiff. Also, that one of the additional provisions of the June 8, 1967 agreement was to the effect that: ‘ ‘ Henceforth, the contract between yourself and the United Fund of Long Island will be renewable by formal action of the Executive Committee and yourself.” The court finds that, though the June 8, 1967 agreement makes reference to the same being considered an addendum to the original agreement, the intent and effect was to informally incorporate by reference the provisions of the original agreement. The court herein determines it was not the purpose, nor did it have the effect of binding either the plaintiff or the defendant during the second three-year term for any rights *869 or obligations that may have occurred during the initial three-year term. The court finds that they were two separate distinct agreements.
By letter dated June 30, 1970, the plaintiff wrote Dr. John L. Miller, then president of the defendant corporation, that it was not his intention to seek a renewal of his employment agreement. No mention was made in this letter of a claim for accumulated vacation time. This letter from the plaintiff was read at a meeting of the executive committee of the defendant organization on July 6,1970. After a discussion a motion was made authorizing the president to appoint a selection committee to recommend someone for the position of executive director and to “ authorize all details appropriate for the transaction concerning changes in executive director personnel.”
On November 12, 1970, the plaintiff approached Dr. Miller stating that he had not received any vacation time in six years. He prepared and presented Dr. Miller with a memorandum granting the plaintiff six months’ vacation leave, with pay, for the period between January 18, 1971 and July 30, 1971. Dr. Miller questioned the six-month period, but the plaintiff persuaded him, after informing him that he took no vacation during the six-year period of his employment. Dr. Miller signed the memorandum after the inclusion, upon his suggestion, of a paragraph providing for consultative services by the plaintiff to the defendant.
Dr. Miller took this memorandum to the next meeting of the executive committee on December 15,1970. He testified that the members of the executive committee were not happy with this arrangement and felt that he had exceeded his authority and further that the plaintiff was not entitled, in effect, to six months ’ additional pay. No formal action, either affirming or disaffirming the actions of the president, was taken, nor were plaintiff’s services as a consultant ever utilized.
On January 19, 1971 plaintiff started to work for another organization and this suit was thereafter instituted.
The question to be determined by the court is whether defendant’s president had the authority to approve the purported agreement dated November 12,1970, which provided for vacation leave for the plaintiff, with pay, between January 18, 1971 and July 30, 1971, and which said agreement the plaintiff alleges is predicated upon the president’s authority to act pursuant to the provisions of a resolution adopted by the executive committee on July 6, 1970 (after having been notified of the plaintiff’s intention not to seek renewal of his employment contract) which *870 reads, in part, as follows: “ 1) Appoint a Selections Committee from Executive Committee membership charged with recommending to the Executive Committee a candidate for the position of Executive Director. 2) Authorize all details appropriate for the transition concerning changes in executive personnel.” (As it appears in the minutes of the Executive Committee meeting of July 6,1970).
This resolution appeared in the annual report as presented and accepted by the board of trustees in January, 1971.
The court finds that the president, pursuant to the resolution of July 6, 1970, had the authority to enter into discussions and an agreement with the plaintiff concerning payment to him for accrued vacation time; however, the court finds that he was not authorized to approve payment of the six months’, two weeks’ accrued vacation time, as reached in the agreement. The language of the resolution is not as broad as plaintiff alleges; however, the court finds that the president was authorized to settle the details as to the termination of the old executive director. In addition to some extent being an express authorization the president had implied an apparent authority to enter into such an agreement. An apparent authorization is that the president did this act within the scope of the exercise of the business, and by signing the agreement, after changing its terms, he held himself out to have said authority to enter into the agreement. This would be the case herein as it would be an agreement which could be authorized and ratified. (Oakes v. Cattaraugus Water Co., 143 N. Y. 430; Hastings v. Brooklyn Life Ins. Co., 138 N. Y. 473; Conover v. Insurance Co. of Albany, 1 N. Y. 290; American Steel Export Co. v. White & Assoc., 224 App. Div. 659; Traitel Marble Co. v. Brown Bros., 159 App. Div. 485; Lyon v. West Side Transfer Co., 132 App. Div. 777; Goldenberg v. Bartel Broadcasting Corp., 47 Misc 2d 105.) An implied authorization is that the corporation in its normal course has to transact such business, and by vesting the president with the authority to ‘1 authorize all details ” it is impliedly vesting him with the power to enter into such an agreement as long as the corporation president does not exceed his power and execute an ‘ ‘ unusual and extraordinary” agreement. (Heaman v. Rowell Co., 261 N. Y. 229 ; Hardin v. Morgan Lithograph Co., 247 N. Y. 332; Carney v. Hew York Life Ins. Co., 162 N. Y. 453; Goldenberg v. Bartel Broadcasting Corp., 47 Misc 2d 105, supra.) However, the court finds that the president’s authorization was limited to the termination details covered by the June 8,1967 memorandum-agreement, which was then in effect. Further, that he had no *871 express, implied or apparent authorization to deal with any vacation time alleged to have accrued under the January 18, 1965 memorandum-agreement, as such actions on the part of the president would have been of such an ‘ ‘ unusual and extraordinary ’ ’ nature as not to bind the defendant corporation. It is uncontroverted that at no previous time did the plaintiff request, nor did the defendant corporation ever approve any vacation time accrued by the plaintiff under the January 18, 1965 memorandum-agreement.
The court further finds that the plaintiff is entitled to receive compensation for accrued vacation time earned and accrued during the period covered by the June 8, 1967 memorandum-agreement. The amount of vacation time the plaintiff is entitled to for that period has been determined upon the basis of one month per year, as testified to by the plaintiff’s expert witness, Mr. George Shea, an expert on personnel benefits for professional employees of United Funds throughout the country. Therefore, the court finds that the plaintiff is entitled to three months of accrued vacation from which any vacation time already taken shall he deducted.
There is disputed testimony as to the amount and dates of time taken by the plaintiff during the course of his employment under the second contract. The only dates upon which there is a time settled is that of August 11 through August 15 of 1969, which the plaintiff claims is compensatory time. The court finds that the salary for this one week shall be subtracted, as vacation, from the three months ’ vacation period he is entitled to he paid for, as it does fall within the period covered by the three-year contract. The reasoning being that from the testimony of the plaintiff’s own expert witness, Mr. George Shea, compensatory time is generally not given, and the natnre of the job is such that the plaintiff had to expect to have been working on what would usually have been considered a day off, without expecting compensation.
The court awards the plaintiff the amount of $6,856, plus interest from January 18,1971.
All motions upon which the conrt reserved decision are accordingly resolved.