**In re DARK HORSE TAVERN, Debtor.**

**Bankruptcy No. 93–61415.**

United States Bankruptcy Court,
N.D. New York.

Oct. 12, 1995.

James Selbach, Syracuse, New York, for Debtor.

Bond, Schoeneck & King, LLP (James Dati, Scott Hatz, of counsel), Syracuse, New York, for Robert M. Frederick.

Michael Collins, Office of the U.S. Trustee, Utica, New York.

William Larkin, Assistant U.S. Attorney, Syracuse, New York, for IRS.

Grass, Balanoff & Whitelaw, P.C. (Michael Balanoff, of counsel), Syracuse, New York, for Douglas Tracy.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

On May 15, 1995, Dark Horse Tavern, Inc. ("Debtor") filed a motion pursuant to Federal Rules of Bankruptcy Procedure ("Fed. R.Bankr.P.") 3017 seeking, *inter alia,* to set a date for the hearing on confirmation of Debtor's Modified Second Plan of Reorganization ("Modified Second Plan"). Thereafter, on May 25, 1995, Robert Frederick ("Frederick") responded by filing a cross-motion seeking to convert or dismiss Debtor's Chapter 11 case pursuant to § 1112(b) of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code").

Both motions appeared on the Court's regular motion calendar in Syracuse, New York on June 6, 1995. At oral argument the United States Trustee ("UST") brought to the Court's attention that since on or about October 1994, Debtor had not filed operating reports pursuant to Code § 1106(a)(1). The UST also advised the Court that Debtor had not paid its administrative fees for the fourth quarter of 1994 and the first quarter of 1995 as required by 28 U.S.C. § 1930(a)(6).

The Court orally directed the UST to submit an order conditionally approving the conversion of the Chapter 11 case to Chapter 7 unless Debtor became current in its operating reports by June 30, 1995.[1] The Court also afforded the parties an opportunity to submit memoranda of law on Frederick's cross-motion as success on the request to convert or dismiss would render Debtor's motion moot. The matter was submitted for decision on June 23, 1995.

### JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1134(b), 157(a), (b)(1), (b)(2)(A) and (O).

### FACTS

Debtor, incorporated under the laws of New York in 1980, operates a bar and tavern in Cortland, New York. William McDermott ("McDermott") and Frederick each own 50% of Debtor's outstanding shares of capital stock. Frederick and McDermott are also Debtor's sole directors with the latter serving as president. On May 5, 1993, Debtor filed a voluntary petition ("Petition") for relief under Chapter 11 of the Code.

At some time prior to the filing of the Petition, Frederick gave McDermott a general power of attorney to manage the affairs of Debtor.[2] *See* Frederick's Cross-motion at ¶ 4; *see also* Mr. Dati's [Frederick's counsel] Oral argument on June 6, 1995. Debtor contends that McDermott has been managing the day to day operations of Debtor for some time and that Frederick has not been involved in the business for several years. *See* Mr. Selbach's [Debtor's counsel] Oral argument on June 6, 1995.

Without specifying a date, Frederick alleges that prior to the filing of the Petition he commenced a proceeding in New York State Supreme Court, Cortland County ("state court action") seeking to dissolve Debtor. Thereafter, pursuant to a corporate resolution dated May 4, 1993 and the alleged general power of attorney, McDermott executed a petition for relief under Chapter 11 in the name of Debtor. *See* Debtor's Corporate Resolution. The state court action was stayed by the filing of the Petition and remains stayed. It is undisputed that on June 17, 1993, Frederick formally revoked the general power of attorney.

On January 14, 1994, Debtor filed a proposed Disclosure Statement and Plan of Reorganization ("Plan"). By Order dated March 4, 1994, the Court approved Debtor's Disclosure Statement and scheduled a confirmation hearing for the Plan. Following two adjournments, on August 10, 1994, the Court orally denied confirmation of Debtor's Plan.

Thereafter, on November 4, 1994, the Trustee moved pursuant to Code § 1112 to convert Debtor's case to Chapter 7 or, in the alternative, to dismiss the case. The Trustee alleged, *inter alia*, that Debtor had failed to file operating reports for April through September 1994 and had failed to pay its quarterly fees. On January 6, 1995, the Court entered a Conditional Order ("January 6 Conditional Order") converting the case to Chapter 7 pending Debtor becoming current in its operating reports, paying the quarterly fees and filing a plan of reorganization by January 27, 1995.

In compliance with the January 6 Conditional Order, Debtor timely filed its operating reports. Frederick's motion papers allege that Debtor's operating reports for May through October 1994 show that Debtor sustained losses of $9,785.53. Debtor's counsel responded at oral argument that Debtor operates a college town bar and May through October are summer months during which many of the college students leave the area.

---

1. On June 12, 1995, the Court entered a Conditional Order converting the case to Chapter 7 ("June 12 Conditional Order"). Thereafter, Debtor timely submitted the delinquent operating reports. However, the Court's review of the case file also reveals that Debtor is now delinquent in filing operating reports for June through September 1995.

2. By letter dated August 11, 1995, the Court requested Debtor to submit a certified copy of the alleged general power of attorney. Debtor provided a copy of the general power of attorney to the Court on October 10, 1995.

Pursuant to the terms of the January 6 Conditional Order, Debtor also filed its Second Plan of Reorganization ("Second Plan") on January 26, 1995. On March 10, 1995, Frederick filed an objection to Debtor's Second Plan. Debtor responded by filing a Modified Second Plan on May 2, 1995.

At the conclusion of oral argument on June 6, 1995, the Court afforded the parties until June 23 to submit memoranda of law. Although Debtor did not do so, Frederick's counsel provided the Court with a Memorandum of Law and an affidavit dated June 22, 1995 ("Hatz affidavit"). *See* Scott R. Hatz, Esq., Affidavit dated June 22, 1995. The Hatz affidavit alleges that Debtor's liquor license was suspended for 60 days. Pursuant to the suspension Debtor was unable to serve alcohol from May 14 until June 14, 1995, with 30 days of the suspension deferred. The Hatz affidavit also alleges that Debtor has submitted an application to the New York State Liquor Authority to transfer its liquor license to another entity. The alleged suspension and application to transfer the liquor license were neither disclosed to the Court nor to the creditors. *See* Hatz Affidavit at ¶ 6.

## DISCUSSION

■■■ The bankruptcy court has wide discretion in determining how to ultimately dispose of a case pursuant to a Code § 1112 motion. *See In re Sal Caruso Cheese, Inc.,* 107 B.R. 808, 817 (Bankr.N.D.N.Y.1989) (citations omitted). Conversion or dismissal of a Chapter 11 case is a drastic measure and the burden is on the movant to prove the relief requested is warranted and not premature. *Id.* (citations omitted). The harshness of conversion or dismissal mandates that it result only upon a strong evidentiary showing. As the Second Circuit explained, "The purpose of § 1112(b) ... is to provide relief where the efforts, however heroic, have proven inadequate to the task of reorganizing his [Debtor's] affairs within a reasonable amount of time." *In re Tiana Queen Motel, Inc.,* 749 F.2d 146, 152 (2d Cir.1984), *cert. denied,* 471 U.S. 1138, 105 S.Ct. 2681, 86 L.Ed.2d 699 (1985).

■■■ Frederick's cross-motion to convert or dismiss relies on Code § 1112(b)(1), (2), and (3). Frederick begins by simply alleging that Debtor sustained losses of $9,785.53 during the months of May through October 1994 and, as such, there is a continuing loss to or diminution of the estate. *See* Frederick's Memorandum of Law at 5 (citing Code § 1112(b)(1)). However, at oral argument Debtor's counsel rebutted this allegation by arguing that Debtor operates a college town bar and May through October are summer months during which many of the college students have left the area. Frederick did not offer any further documentary or testimonial evidence supporting his claim that the estate was continuing to suffer losses. As such, the Court finds that Frederick did not sustain his burden of proving that conversion or dismissal is warranted pursuant to Code § 1112(b)(1).

The crux of Frederick's argument is that Debtor has been in Chapter 11 for over two years and the Modified Second Plan, and indeed any plan proposed by Debtor, is patently unconfirmable. Frederick argues that Debtor does not have authority to propose a disclosure statement and a plan of reorganization unless it is first approved by Debtor's board of directors. Frederick maintains that because he and McDermott are deadlocked in their attempts to manage the business, Debtor is unable to propose a disclosure statement and a plan of reorganization. Frederick concludes that Debtor's inability to propose the same constitutes cause for conversion of Debtor's case to Chapter 7 or dismissal of the case pursuant to Code § 1112(b)(2) and (3).

■■■ The Court must determine whether Debtor may, without the approval of the board of directors, file a disclosure statement and a plan of reorganization. It is well established that outside the bankruptcy context a corporation can only act through its directors, officers, and employees. *See Goldenberg v. Bartell Broadcasting Corp.,* 262 N.Y.S.2d 274, 279, 47 Misc.2d 105 (N.Y.Sup. 1965). It is the board of directors, not directors acting individually, who are vested with broad power to determine corporate policy and conduct corporate activities. *See*

*People v. Rondon,* 439 N.Y.S.2d 803, 109 Misc.2d 394 (N.Y.Sup.1981). The board of directors may exercise their power to determine corporate policy when a quorum[3] of directors is present and a majority endorses the act. *See* New York Business Corporation Law ("NYBCL") § 708(d).

■ The Second Circuit has proffered the general rule that corporate governance should remain uncompromised by a bankruptcy reorganization proceeding. *See In re Johns–Manville Corp.,* 801 F.2d 60, 64 (2d Cir.1986) (shareholders are prohibited from calling shareholders meeting *only if* there is a showing of "clear abuse"). Thus, when a corporation is a debtor in possession, the board of directors continues to be vested with the authority to make decisions on behalf of the corporation. *See In re Potter Instrument Co., Inc.,* 593 F.2d 470, 474–475 (2d Cir.1979); *see generally In re Johns–Manville Corp., supra,* 801 F.2d 60. It is the board of directors, then, that has the authority to propose a plan of reorganization and thereby determine corporate policy and conduct corporate activity. *See Matter of Nephi Rubber Products Corp.,* 120 B.R. 477, 482 (Bankr.N.D.Ind.1990). Thus, a corporate president generally cannot bind the corporation in a bankruptcy proceeding absent authority of the board of directors. *See In re I.D. Craig Service Corp.,* 118 B.R. 335, 338 (Bankr.W.D.Pa.1990); *compare In re Acequia, Inc.,* 787 F.2d 1352, 1362 (9th Cir.1986) (given evidence of director's misconduct and the threat to the reorganization proceeding, court granted exclusive control of debtor to remaining director).

■ On or about June 17, 1993, Frederick revoked the general power of attorney that he had granted to McDermott. The revocation of this authority and the acrimonious relationship between Debtor's two directors has effectively created a corporate deadlock. Thus, Debtor's board of directors is unable to approve a disclosure statement and a plan of reorganization by majority vote. As such, the Court concludes that Debtor must withdraw its Modified Second Plan and that Debtor is precluded from proposing disclosure statements and plans of reorganization absent approval from its board of directors.

■ At oral argument Debtor contended that Frederick has not been involved with the operations of the business for several years and "sat on his rights" to object to the filing of disclosure statements and plans of reorganization. Presumably, Debtor relies on the doctrine of laches to conclude that Frederick is now estopped from objecting to the Modified Second Plan.[4]

■ The doctrine of laches is an equitable remedy invoked by debtors to bar a variety of claims upon which motions to dismiss are based. *See In re Rebeor,* Ch. 7 Case No. 88–00810 slip op. at 7 (Bankr. N.D.N.Y. January 8, 1992). At the outset, the Court notes the well established principle that "he who seeks equity must do equity." *See Cherno v. Dutch American Mercantile Corp.,* 353 F.2d 147, 155 (2d Cir.1965). In the matter *sub judice,* the Court cannot find that Debtor has acted in an equitable manner during the course of this bankruptcy case.

For example, since on or about April 1994 Debtor has not submitted statutorily mandated operating reports and quarterly fees unless faced with a conditional order of conversion. *See e.g.* January 6 Conditional Order and June 12 Conditional Order. Having satisfied the Court's June 12 Conditional Order, Debtor is once again delinquent in its operating reports for June through September 1995. The Court takes a dim view of a debtor that must "be coddled into complying with the Code ..." *In re Sal Caruso Cheese, Inc., supra,* 107 B.R. at 818. (debtor failed to file operating reports). The Court is also concerned by the allegations that Debtor's liquor license was suspended for 60 days and that Debtor has filed an application with the New York State Liquor Authority to transfer its liquor license to another entity

---

**3.** Unless a greater proportion is required by the certificate of incorporation or the by-laws, the quorum cannot be less than one-third the aggregate number of directors. NYBCL § 707.

**4.** Although the Court afforded the parties an opportunity to submit memoranda of law clarifying their respective positions, Debtor did not do so and relies solely on its oral argument.

without notice to creditors and the Court. *See* Hatz Affidavit.[5]

■ Aside from the equitable considerations, the party alleging the doctrine of laches must establish (1) that it lacked knowledge that a claim against it could be asserted; (2) lack of diligence by the opposing party, and (3) the resulting prejudice because of the late claim. *See In re Rebeor, supra*, slip op. at 7 (citing *Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961)); *Rapf v. Suffolk County of New York*, 755 F.2d 282, 292 (2d Cir.1985).

■ Admittedly, Debtor has satisfied the second element. Frederick could have argued at least as early as June 17, 1993, the date he formally revoked the general power of attorney, that Debtor was precluded from proposing disclosure statements and plans of reorganization because of corporate deadlock. As such, Frederick did not proceed diligently in asserting his claim. Nevertheless, Debtor has not satisfied the first and third elements of laches, namely, that Debtor lacked knowledge that Frederick could assert a claim and the resulting prejudice.

The Court finds that in light of the fact that Frederick commenced a state court dissolution proceeding prior to the filing of the Petition, Debtor knew, or should have known, that Frederick would likely oppose a plan of reorganization. Debtor should also have become aware of Frederick's objections when he revoked the general power of attorney on June 17, 1993, shortly after the filing of the Petition. Finally, the Court finds that Debtor's inability to propose a plan of reorganization does not result in substantial prejudice as Debtor has been unable to propose a confirmable plan for more than two years.

■ Frederick argues that Debtor's inability to propose a plan constitutes cause for conversion or dismissal pursuant to Code § 1112(b)(2).[6] The Court, however, cannot agree with this conclusion.

Courts have generally applied Code § 1112(b)(2) where the debtor is a corporate shell lacking a place of business, employees, payroll or discernible economic activity. *See In re Sphere Holding Corp.*, 162 B.R. 639, 643 n. 4 (E.D.N.Y.1994); *In re Economy Cab & Tool Co., Inc.*, 44 B.R. 721, 725 (Bankr. D.Minn.1984). This Court has also applied Code § 1112(b)(2) where the debtor is an individual, a viable and adequate plan of reorganization has not been presented within a reasonable time, and the estate creditors continue to suffer losses as a result of the delay. *See In re McDermott*, 77 B.R. 384, 386 (Bankr.N.D.N.Y.1987).

In the matter *sub judice*, Frederick has not presented any evidence demonstrating that Debtor is a corporate shell lacking a place of business, employees, payroll or economic activity. The Court also finds that Frederick has not met his burden of establishing that estate creditors continue to suffer losses. *See supra* text at 5.

■ The Court also notes that Frederick is in error in assuming that Debtor's inability to *propose* a plan constitutes an inability to *effectuate* a plan. *See* Code § 1112(b)(2). An inability to effectuate a plan "means that the debtor lacks the ability to formulate a plan or carry one out." *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir.1989); *see In re Economy Cab & Tool Co., Inc., supra*, 44 B.R. at 725. In the instant case, Debtor has formulated a plan, namely, the Modified Second Plan, but has no authority to propose it. Thus, Debtor, at this point, is distinguishable from those debtors that cannot formulate a plan because of their poor financial condition or the structure of the claims against them.

In addition, the New York Business Corporation Law provides that "under any applicable act of congress relating to reorganization of corporations, the corporation shall have authority, *without action of its shareholders or board*, to put into *effect* and *carry*

---

5. The Court has considered the Hatz Affidavit even though it was submitted well after oral argument. Hatz asserts that the suspension of Debtor's liquor license was not made known until after the oral argument of the motions on June 6, 1995.

6. Code § 1112(b)(2) states that an "inability to *effectuate* a plan" is cause for conversion or dismissal. (emphasis added)

*out* the plan and decree and orders of the court relative thereto." NYBCL § 808(a) (emphasis added). A corporation that is thwarted by deadlock may nevertheless be able to effectuate a plan of reorganization. Thus, Debtor's inability to propose a plan because of corporate deadlock does not, standing alone, constitute cause for conversion or dismissal pursuant to Code § 1112(b)(2).

As Debtor's period of exclusivity to file a plan has terminated, any party in interest, including equity security holders, may file a disclosure statement and a plan of reorganization pursuant to Code § 1121(c) and Fed.R.Bankr.P. 3016(a).[7] *See In the Matter of Mother Hubbard, Inc.*, 152 B.R. 189, 194 (Bankr.W.D.Mich.1993). However, the Court is also well aware that Debtor has been enjoying the protection of Chapter 11 for over two years. Thus, in order to avoid unreasonable delays, the Court affords the parties in interest a limited opportunity to file a disclosure statement with a plan of reorganization with the Bankruptcy Court Clerk's office in Utica, New York pursuant to Code § 1125 and Fed.R.Bankr.P. 3016(c). A party in interest to consider such a course of action should be well prepared to fully disclose Debtor's activities and provide extensive proof of Debtor's financial viability.

For the reasons set forth herein, it is

ORDERED that Debtor's motion seeking, *inter alia*, to set a date for the hearing on confirmation of Debtor's Modified Second Plan is denied; it is further

ORDERED that Frederick's motion to convert or dismiss pursuant to Code § 1112(b) is denied without prejudice; it is further

ORDERED that Debtor shall notice all parties in interest that they have 30 days from the date of entry of this Order to file a disclosure statement with a plan of reorganization with the Bankruptcy Court Clerk's office in Utica, New York; it is further

---

7. Debtor's exclusive period to file a plan terminated on or about September 5, 1993. *See* Order

ORDERED that Debtor shall serve all delinquent operating reports by November 1, 1995; and it is finally

ORDERED that in the event that Debtor and/or any party in interest fails to comply with any of the terms of this Order, the United States Trustee shall submit an ex parte order converting this case to Chapter 7.

Denying Extension of Exclusivity Period.